**In re McCRORY CORPORATION, et al., Debtors.**

**McCRORY CORPORATION, et al., Plaintiffs,**

v.

**99¢ ONLY STORES, Defendant.**

**Bankruptcy Nos. 92–B–41133 (CB) to 92–B–41160 (CB).**
**Adv. No. 93 Civ. 9389A.**
**No. M–47 (RJW).**

United States District Court, S.D. New York.

Oct. 26, 1993.

---

Robert E. Hanlon, Fried, Frank, Harris, Shriver & Jacobson, New York City, for plaintiffs.

Charles L. Kerr, Morrison & Foerster, New York City, for defendant.

## MEMORANDUM DECISION

ROBERT J. WARD, District Judge.

Defendant 99¢ Only Stores ("99 Only") moves for an order to withdraw the reference of this adversary proceeding from the Bankruptcy Court for the Southern District of New York, pursuant to 28 U.S.C. § 157(d), and to transfer the proceeding to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1404(a), 1412. For the following reasons, defendant's motion is granted in all respects.

## BACKGROUND

99 Only is a California Corporation with its principal place of business in Vernon, California, in Los Angeles County. It owns a chain of discount stores in Southern California. For over ten years, defendant has been using

trade names and service marks that feature the concept of selling items for 99¢, including "99¢" and "99¢ Only Stores." It has registered both of those marks with the California Secretary of State and the "99¢ Only Stores" mark with the United States Patent and Trademark Office.

Plaintiff McCrory Corporation ("McCrory") is a Delaware Corporation with headquarters in New York, New York and York, Pennsylvania. McCrory operates discount stores in several states including California. In August 1991, McCrory adopted the service mark "99¢ Bargain Store," and has been using that service mark, as well as "99¢" and "99¢ Store," for its J.J. Newberry Co. discount store business. It claims that it has spent $1.5 million to promote the "99¢ Bargain Store" mark, and has projected sales of $125 million attributable to the mark. On February 26, 1992, McCrory and its subsidiaries filed for Chapter 11 protection in the Southern District of New York.

The parties are presently embroiled in a dispute over the validity and strength of their respective trademarks. In November, 1992, 99 Only urged McCrory in a letter to change the 99¢ names and marks plaintiffs were using, claiming that there is likelihood of confusion that these marks would infringe on defendant's trade names. On July 12, 1993, 99 Only filed a complaint against McCrory in the California Superior Court for the County of Los Angeles relying on California state causes of action. That action was removed by McCrory to the United States District Court for the Central District of California based on diversity and federal question jurisdiction on August 11, 1993. In its Petition for Removal, McCrory states: "Plaintiff's allegations ... necessarily raise the issues of whether such marks are properly registerable trademarks under Section 2(e)(1) of the Lanham Act ... or whether Defendant's conduct constitutes unfair competition prohibited by Section 43(a) of the Lanham Act." Gardner Decl. Ex. 1.

On August 10, 1993, McCrory and its subsidiaries brought this adversary proceeding in the United States Bankruptcy Court for the Southern District of New York. Plaintiffs seek a declaratory judgment that their conduct does not violate 99 Only's rights under: (1) trademark provisions in the Lanham Act; (2) common law trademark rights; (3) Section 43(a) of the Lanham Act; and (4) common law unfair competition rights. In addition, plaintiffs seek, among others, cancellation of 99 Only's trademarks and damages under Section 38 of the Lanham Act. McCrory has now filed an Answer and Counterclaims in the California action asking for essentially the same declaratory relief it has requested in this adversary proceeding.

99 Only contends that these issues should be resolved in the Central District of California since its operations, offices and places of business are all located there and its officers and executives all reside there. Moreover, it asserts that McCrory's executives and employees located in California have direct knowledge of any infringement. Finally, 99 Only claims that third party witnesses familiar with plaintiffs, defendant, their respective tradenames and the strength of their marks in the relevant market are all located in Southern California.

McCrory argues that, because the adversary proceeding is a core proceeding that goes to the very heart of its efforts to reorganize and administer its estate, the Bankruptcy Court for the Southern District of New York should retain jurisdiction. It contends that withdrawal of the reference would unduly delay administration of the estate and impede its attempts at preserving a significant and valuable asset of the estate. According to plaintiffs, there cannot be mandatory withdrawal of the reference, because the proceeding involves only a straightforward application of fixed legal standards under non-bankruptcy law (i.e. the Lanham Act) to a set of facts. Similarly, plaintiffs maintain that defendant's motion to transfer venue is deficient, because such a transfer would be inconvenient for McCrory. In plaintiffs' view, defendant has not met its burden of demonstrating that the Court should override plaintiffs' choice of forum and transfer the case to California.

## DISCUSSION

A. *Withdrawing Reference from the Bankruptcy Court Under 28 U.S.C. § 157(d)*

28 U.S.C. § 157(a) authorizes a district court to provide that bankruptcy matters be

referred to the district's bankruptcy courts. However, under § 157(d), the district court may, and in some circumstances must, withdraw the reference of such matters. This section provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred to under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

### 1. Mandatory Withdrawal

In the Second Circuit, mandatory withdrawal is required for "cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir.1991). Courts follow a two-pronged analysis. First, they reserve mandatory withdrawal for cases in which there needs to be "substantial and material consideration of non-Bankruptcy code federal statutes." *Shugrue v. Air Line Pilots Ass'n Int'l*, 922 F.2d 984, 995 (2d Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). Second, they determine whether such consideration is "necessary for the resolution of the proceeding." *Id.* In this dispute, McCrory does not deny that consideration of Lanham Act law is necessary for resolution of the proceeding.

■ At issue, however, is the degree to which the bankruptcy judge would have to consider federal trademark law. Courts have defined "consideration," in the context of § 157(d), to mean "something more than the mere process of examining, thinking about, or taking into account." *American Freight System, Inc. v. ICC*, 150 B.R. 790,

792 (Bankr.D.Kan.1993) (citing *In re White Motor Corp.*, 42 B.R. 693, 704 (Bankr. N.D.Ohio 1984)). While consideration of non-Bankruptcy Code law must entail more than routine application to the facts, matters requiring significant application of non-bankruptcy federal statutes affecting interstate commerce must be removed from the bankruptcy court and transferred to the district courts which have more experience in applying those laws. *Id.* at 793.

■ McCrory suggests that "consideration" refers to interpreting a statute when the meaning of the statute is not settled or where the case involves an issue of first impression. However, this Court finds McCrory's contention to be too strict a reading of the Second Circuit's requirement that bankruptcy judges not engage in *significant* interpretation, as opposed to simple application, of non-Bankruptcy Code federal laws. *City of New York v. Exxon Corp.*, 932 F.2d at 1026. In fact, in *Exxon*, the Court did not withdraw the reference because the issues involved were matters of first impression. Rather, withdrawal was mandatory because the court deciding the issues would have to interpret terms of art in a non-Bankruptcy Code statute in light of a particular set of facts. Similarly, the present case entails interpreting provisions of the Lanham Act with respect to the factual context.

Interpreting Lanham Act provisions to a given set of facts is, generally, neither simple nor straightforward. In examining a trademark issue, especially one involving "secondary meaning," a court must familiarize itself with different interpretations and then fashion an appropriate standard. As one scholar has described the role of courts in handling a secondary meaning question, "[a] court *must properly explore* ... a secondary meaning mark in order to determine its scope of protection." 3 Rudolf Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 19–25 at 125 (1989).[1]

---

1. To determine whether a mark has acquired a secondary meaning, it is appropriate to consider: "(1) the length and manner of it use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made to promote

a conscious connection, in the public's mind, between that name or mark and a particular product or venture." 3 Rudolf Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 19–27 at 149.

■ To resolve the issues raised by plaintiffs in their complaint will require substantial and material consideration of issues under the Lanham Act. The bankruptcy court would have to determine, among others, the relative rights of McCrory and 99 Only to various marks under trademark law, whether these marks are protectable under the Lanham Act, and if so, to what degree protection is needed. Moreover, the bankruptcy court would be required to rule on whether the use of similar marks by McCrory creates a likelihood of confusion and constitutes unfair competition. Such an analysis clearly necessitates significant consideration of federal trademark law. Accordingly, defendant has demonstrated that there should be mandatory withdrawal of the reference to the bankruptcy court.

### 2. Permissive Withdrawal

■ Even were this Court to determine that withdrawal is not mandatory, it would be appropriate for the Court to exercise its discretionary authority to withdraw the reference. In the Second Circuit, district courts consider a number of factors to determine whether discretionary withdrawal of the reference is appropriate. "[I]n evaluating cause[, the court considers] whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." *Orion Pictures Corp. v. Showtime Networks, Inc.,* 4 F.3d 1095, 1101 (2d Cir.1993); *see also, In re Kenai Corp.,* 136 B.R. 59, 61 (Bankr.S.D.N.Y. 1992) (factors include, among others: "(1) judicial economy, (2) uniform bankruptcy administration, (3) reduction of forum shopping.").

Before addressing these other factors, the Court should first determine whether the proceeding is core or non-core, "since it is upon this issue that questions of efficiency and uniformity will turn." *Id.* McCrory claims the adversary proceeding is core, because it goes to the heart of the debtor's reorganization plans. Plaintiffs contend that, if defendant succeeds in depriving the debt-or's estate, its efforts to reorganize will be severely injured.

■ The Court finds, however, that this adversary proceeding is not a core proceeding within the meaning of § 157. "[A] proceeding is encompassed within the bankruptcy court's core . . . 'if it invokes a substantive right provided by title 11 or if it is a proceeding that, by nature, could arise only in the context of a bankruptcy case.'" *Silverman v. General Ry. Signal Co.,* 144 B.R. 244, 249 (Bankr.S.D.N.Y.1992) (quoting *Wood v. Wood,* 825 F.2d 90, 97 (5th Cir.1987)); *accord Acolyte Elec. Corp. v. City of New York,* 69 B.R. 155, 173 (Bankr.E.D.N.Y.1986) ("To be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment."), *aff'd,* 1987 WL 47763 (E.D.N.Y. Mar. 27, 1987).

While McCrory obviously seeks to prevail in the adversary proceeding in order to reorganize, it also seeks to cancel 99 Only's trademarks and enjoin defendant from protecting its registered marks. As a result, the proceeding is not one which could arise only in the context of a bankruptcy case. Certainly, the dispute would exist independent of a bankruptcy environment.

McCrory claims that, with respect to judicial economy, the bankruptcy court would come to a quicker resolution of the dispute, because the dockets of district judges are heavier than those of bankruptcy judges. Even were the Court to agree that the bankruptcy court is less backlogged, there is no guarantee that the bankruptcy judge assigned to handle the case would resolve it more expeditiously than a district court judge. As a general matter, a district judge has more experience than a bankruptcy judge in handling trademark issues. Adjudication of the trademark issues in this case will likely result in extensive litigation. There would probably be considerable discovery, a variety of pre-trial motions, and the testimony of numerous witnesses and other evidence offered at trial. It is economically and administratively prudent for a district judge, experienced in trademark law, rather

than a bankruptcy judge to handle these matters.

Plaintiffs also contend that permitting the bankruptcy judge to hear the proceeding would promote uniformity in the administration of the debtor's estate. The Court is convinced, however, that the adversary proceeding will focus more on the validity of the parties' trademarks and tradenames rather than the administration of the debtor's estate. To the extent that there is a relationship between the trademark issues and administration of the estate, the latter is dependent on the former.

Finally, McCrory argues that 99 Only has engaged in forum shopping because in the same way it tried to avoid federal court by filing an action in California State Court, it is now trying to avoid the bankruptcy court. However, the forum shopping allegation can be made concerning McCrory as well. McCrory removed the California action to federal court and now seeks to have the issues resolved in New York. Accordingly, defendant's motion could be granted based alternatively on the standards for permissive withdrawal.

### B. *Venue*

28 U.S.C. § 1404(a) states:

> For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.[2]

Venue is proper in the Central District of California under 28 U.S.C. §§ 1391(b)(1) and (2). 99 Only resides and has its principal place of business there, and the events giving rise to the adversary proceeding took place within that district. The United States District Court for the Central District of California has subject matter jurisdiction over the claims in the adversary proceeding under 28 U.S.C. §§ 1331, 1332 and 15 U.S.C. § 1121. Moreover, both 99 Only and McCrory are properly subject to personal jurisdiction in the Central District of California.

The question before the Court, then, is whether it is in the interests of justice to transfer the case to California. In deciding a transfer motion, the Court must consider the following factors:

> (1) the place where the operative facts occurred; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the relative ease of access to sources of proof; (5) the availability of process to compel attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) a forum's familiarity with the governing law; and (8) trial efficiency and the interests of justice.

*Viacom Int'l, Inc. v. Melvin Simon Prod., Inc.,* 774 F.Supp. 858, 867–68 (S.D.N.Y.1991).

The first factor listed is known as the "center of gravity" test. There is no question but that Southern California is the center of gravity of the trademark claims raised in McCrory's complaint. All of 99 Only's stores are located there, as are McCrory's J.J. Newberry stores. The promotion and protection of the respective tradenames occurred in Southern California as well.

In terms of the convenience of the parties, McCrory's argument that, while transfer may be convenient for 99 Only, it is not convenient for plaintiffs, is not persuasive. Inasmuch as McCrory has at least some contact with California while 99 Only has no contact with New York, the relative convenience of the parties clearly favors transfer.

Likewise, the convenience of witnesses and the access to sources of proof factors favor 99 Only. Factual questions concerning secondary meaning will undoubtedly concentrate on the likelihood of confusion in the relevant market, which is in Southern California. Third party witnesses from the area will likely be called to testify. Similarly, documentary evidence, including advertising information and purchase orders, from both plaintiffs' and defendant's California operations will be needed to resolve this dispute. Therefore, in terms of evidentiary concerns, California is more convenient than New York.

---

**2.** The standards for § 1412 are essentially the same as those for § 1404(a).

508

In sum, as a result of these factors as well as the likelihood that the adversary proceeding will have to rely on California law in resolving some of the trademark and unfair competition claims, this Court finds it to be in the interests of justice to transfer the adversary proceeding to the Central District of California.

### CONCLUSION

For the foregoing reasons, the Court grants defendant's motion to withdraw the reference of the adversary proceeding from the Bankruptcy Court for the Southern District of New York and transfers the proceeding to the United States District Court for the Central District of California.

It is so ordered.