In re HOUBIGANT, INC., et al., Debtors.

HOUBIGANT, INC. and Parfums
Parquet, Inc., Plaintiffs,

v.

ACB MERCANTILE, INC., ACB Fragrances and Cosmetics, Inc., Giacomo Giuliano, Augustine Celaya and Gilles Pellerin, V & B Distributors, Canada, Inc., Harold Schiff, A. Rosenblum Sales, Inc., and Rosenblum, Defendants.

ACB MERCANTILE, INC. and ACB
Fragrances and Cosmetics, Inc.,
Counterclaim–Plaintiffs,

v.

HOUBIGANT, INC., Parfums Parquet, Houbigant, (1995) Ltd. (f.k.a. 3088766 Canada, Ltd.), Michael Sherman, Luigi Massironi, Robert Graber, Thomas Bonoma, Renaissance Cosmetics, Inc., Kidd Kamm & Company, CTC International Group, Ltd., Brad Robinson and Chemical Bank New Jersey, N.A. (as agent for itself and National Westminister Bank U.S.A.), Counterclaim Defendants.

No. 94 Civ. 2467 (RWS).

United States District Court,
S.D. New York.

Aug. 24, 1995.

Kaye, Scholer, Fierman, Hays & Handler (Mitchel H. Perkiel, Lisa M. Solomon, Joshua E. Fruchter, Steven D. Goldberg, of counsel), New York City, for plaintiff and counterclaim defendants Michael Sherman, Luigi Massironi and Robert Graber.

Marcus Montgomery Wolfson, P.C. (Sam P. Israel, Lisa Buckley, of counsel), New York City, for defendant ACB Mercantile, Inc.

## OPINION

SWEET, District Judge.

Plaintiff/Debtor Houbigant, Inc. ("Houbigant") moves to restore the reference of this adversary proceeding to Bankruptcy Court. For the reasons discussed herein, the motion is denied.

### Parties

Houbigant is a corporation organized and existing under the laws of Delaware, with its principal place of business in New York, New York. Houbigant is the parent of a group of domestic and foreign companies which marketed and distributed perfumes and toiletries worldwide. On November 18, 1993, Houbigant and certain of its affiliates (collectively the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this District. Since that time they have continued in possession and control of their businesses and assets as debtors in possession. Since filing the petition, Houbigant discontinued its design, marketing and distribution operations and became a trademark licensor. *In re Houbigant, Inc.,* 182 B.R. 958 (Bankr.S.D.N.Y.1995).

Plaintiff Parfums Parquet, Incorporated ("PPI") is a corporation organized and existing under the laws of Delaware, with its principal place of business in New York, New York. On June 2, 1994 the Bankruptcy Court authorized Houbigant to implement and effectuate a license agreement with PPI[1] Thereunder, in exchange for royalty payments, Houbigant licenses certain patents, trademarks, trade names, and applications as well as technical knowledge with respect to them. PPI was Houbigant's exclusive United States licensee.

Defendant ACB Mercantile, Inc. ("ACB Mercantile") is a Canadian corporation with its principal place of business in Quebec, Canada.

Defendant ACB Fragrances and Cosmetics, Inc. ("ACB") is a Canadian corporation with its principal place of business in Quebec, Canada. ACB Mercantile and ACB, Inc. are collectively referred to as "ACB companies." The ACB companies are Houbigant creditors in the Bankruptcy proceedings. ACB, Inc. and Houbigant entered into a series of agreements in April 1993 by which Houbigant granted ACB, Inc. an exclusive license to manufacture, sell, and distribute certain Houbigant products in Canada. An asset purchase agreement dated December 12, 1994 conveyed ACB, Inc.'s business to PPI.

Defendant Augustine Celaya ("Celaya"), an officer and principal shareholder of ACB Mercantile, is an individual residing in Texas.

Defendant Giacomo Giuliano ("Giuliano"), an officer and principal shareholder of ACB Mercantile, is an individual residing in Quebec.

Defendant Gilles Pellerin ("Pellerin"), an officer and principal shareholder of ACB Mercantile, is an individual residing in Quebec.

### Prior Proceedings

Houbigant and PPI filed an adversary proceeding in Bankruptcy Court in the Southern District of New York on April 4, 1995 pursuant to section 105(a) of title XI of the United States Code, alleging violations of the Lanham Act, various statutes of the State of New York and the common law, seeking damages and to enjoin defendants from infringing upon rights in certain Houbigant trademarks, unfair competition and injuring their business reputations or diluting the distinctive quality of the trademarks.

On April 11, 1994 the defendants moved to withdraw the reference to the District Court. By order to show cause, signed on April 11, 1994, the motion was set for hearing on April 14, 1994. On April 14, the parties appeared before this Court, and an order was entered postponing argument on the motion until May 3, 1995.[2]

On May 5, PPI's affiliate, PPI–Canada, commenced an action against ACB in Canada

---

1. PPI was then called New Fragrance License Corp.

2. The parties agreed to an additional postponement until May 17.

alleging that ACB sold products infringing Houbigant's trademarks.

On May 17, 1995, the parties appeared before the Court and the motion to withdraw adversary proceeding from the Bankruptcy Court was granted, with no opposition voiced, on consent of all parties.

On May 26, 1995, the plaintiffs filed the First Amended Complaint (the "Complaint"), no answer having yet been filed by the defendants. The Complaint recites seventeen claims and names the ACB companies, Celaya, Giuliano, Pellerin, V & B Distributors, Harold Schiff, A. Rosenblum Sales, Inc., and Bernard Rosenblum as defendants.

By Order of the Bankruptcy Court dated June 14, 1995, Houbigant's "Third Amended Joint Disclosure Statement Under Section 1125 of the Bankruptcy Code," was approved and Houbigant and its affiliated debtors were authorized to commence the process of soliciting acceptances of the Plan.

On June 16, 1995 ACB filed an answer and counterclaims against Houbigant, PPI, and third-party defendants Luigi Massirioni, Robert Graber, Thomas Bonoma, Renaissance, PPI Canada (a wholly owned subsidiary of plaintiff PPI), Kidd Kamm & Company, CTC International Group, Brad Robinson, Chemical Bank New Jersey, N.A. ("Chemical"), and Michael Sherman. These third-party defendants are not parties in the bankruptcy proceeding. The seventeen counterclaims allege fraud (Count I), violations of the Canadian Trademark Act (Count II), Breaches of Fiduciary Duties (Count III), Breached of Covenants of Good faith and fair dealing (Count IV), civil conspiracy to defraud (Count V), Unfair Competition Under the Lanham Act (Count VI), Injury to Business under New York Business Law (Count VII), Violation of New York Business Law regarding false advertising (Count VIII), Common Law Unfair Competition (Count IX), Tortious Interference with Contracts (Count X), Defamation Per Se (Count XI), Defamation under the Canadian Trademarks Act (Count XII), Contractual Indemnification (Count XIII), Indemnification Implied in Law (Count XIV), Post petition breaches of contract against Houbigant and PPI–Canada (Counts XV and XVI), for Cancellation of Trademarks Registrations under the Lanham Act (Count XVII).

A stipulation and order of settlement between plaintiffs and non-ACB defendants named in Houbigant's Complaint, including A. Rosenblum Sales, Bernard Rosenblum, Harold Schiff, and V & B distributors Canada, was signed by the Honorable John S. Martin, acting in his Part One capacity, on July 14, 1995.

Between July 14 and July 24, 1995, motions were made by Houbigant, PPI, Chemical Bank and ACB to dismiss the claims against each of them by the opposing party. Houbigant's motion to remand this proceeding back to Bankruptcy Court was filed on July 17, 1995. The parties briefed these motions extensively with reply briefs filed to each of the five sets of motions. Argument was heard for several hours on August 3, 1995, and the motions were considered fully submitted at that time.

This opinion resolves only the motion to remand the entire case back to the Bankruptcy Court. The motions to dismiss remain *sub judice* with the Court with decision reserved.

### Parallel Claims filed in Bankruptcy Court [3]

ACB filed five unsecured and administrative proofs of claim against Houbigant's estate in Bankruptcy, which ACB claims were filed defensively to preserve assets from the estate. These claims in the Bankruptcy proceeding include:

(i) an unsecured claim for breach of the ACB License Agreement based upon Houbigant purported failure to sell "hec" (perfume oil) to ACB at a re-

---

**3.** Plaintiffs assert that by order of the Bankruptcy Court, April 15, 1994 (the "General Bar Date") was set as the last date for the filing of proofs of unsecured claims against Houbigant and its affiliated debtors. Similarly, January 31, 1995 (the "Administrative Bar Date") was set as the last date for filing proof of administrative expenses accrued on or after the Filing Date through June 30, 1994. On April 14, 1994 (i), April 18, 1995 and May 12, 1995, ACB filed proofs of claim with the Clerk of the Bankruptcy which total $30 million.

quired pricing formula (the "Hec claim");

(ii) an unsecured claim in the aggregate amount of $5 million based upon Houbigant's alleged breach of the exclusivity provisions of the ACB License Agreement in granting an entity known as Unilex, Ltd. ("unilex") the right to sell certain Houbigant products worldwide, without territorial restriction, pursuant to the terms of an agreement (the "Unilex Agreement") between Unilex and one of Houbigant's foreign non-debtor subsidiaries (the "Unsecured Unilex Claim")

(iii) an administrative claim that is identical to the Unsecured Unilex Claim, except for its assertion of administrative priority status;

(iv) an administrative claim in the amount of $18 million seeking contractual and common law indemnification on account of the claims asserted by Houbigant and PPI against ACB in this Adversary Proceeding and an action commenced by PPI Canada against ACB in Canada (the "Indemnification Claim");

(v) an administrative claim in excess of $6 million based upon alleged violation of Canadian trademark law and Houbigant's alleged defamation of ACB.

Plaintiffs assert that five of the seventeen ACB Counterclaims filed in the adversary proceeding are duplicative of these bankruptcy claims.

On May 24, 1995 Houbigant commenced an adversary proceeding in Bankruptcy Court objecting to the ACB Bankruptcy claims on the grounds that (a) with one exception, they were time-barred by virtue of the court-ordered bar dates, (b) had been virtually all assigned to PPI Canada pursuant to the Asset Purchase Agreement, and (c) were without merit. Simultaneous therewith, Houbigant asserted counterclaims against ACB seeking damages for ACB's breaches of various provisions of the ACB License Agreement, an accounting of ACB's sales to rectify ACB's under reporting of sales as required by the ACB License Agreement, damages for ACB's failure to pay for goods

sold and delivered by Houbigant, and damages for failure to repay a loan from Houbigant to ACB made for the purpose of financing the start up and initial working capital requirements of ACB.

### Discussion

Plaintiffs, who consented to withdraw this adversary proceeding on May 17, 1995, moved to remand the case back to Bankruptcy Court on July 14, 1995, three days after a stipulation of settlement was signed with the non-ACB defendants in the adversary proceeding. Plaintiffs assert that the remand is appropriate due to the changed circumstances of the case, primarily the absence of the non-ACB defendants and the substantial relief provided by that agreement.

According to the defendants, withdrawal of the adversary proceeding is mandatory under Section 157(d) and, in any event permissive withdrawal should be exercised in the circumstances of this case.

### Standards for Withdrawal Under Section 157(d)

In pertinent part, Section 157(d) provides:

The district court, shall, on timely motion of a party, so withdraw a proceeding [from the bankruptcy court] if the court determine that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

Because this sentence of Section 157(d), if read literally, would eviscerate much of the work of the bankruptcy courts, the "courts are admonished by the legislative history to construe this sentence narrowly." 1 Collier on Bankruptcy P 3.01 at 3–59 (15th ed. 1987). The leading commentator, noting the conjunctive "and" in the sentence in question, has observed that a matter is not subject to mandatory withdrawal unless interpretation of both the provisions of Title 11 and other laws of the United States is required for resolution of the controversy. *Id.* at 3–61; *see In re Adelphi Institute, Inc.*, 112 B.R. 534, 536 (S.D.N.Y.1990); *see also Block*

*v. Anthony Tammaro, Inc.,* 56 B.R. 999, 1004–07 (D.N.J.1986); *In re Baldwin–United Corp.,* 47 B.R. 898, 899 (D.C.Ohio 1984). At a minimum, Section 157(d) does not mandate withdrawal unless the district court "can make an affirmative determination that resolution of the claims will require substantial and material consideration of non-code statutes." *In re White Motor Corp.,* 42 B.R. 693, 705 (D.Ohio 1984), cited with approval in *In re Ionosphere Clubs, Inc.,* 103 B.R. 416, 419 (S.D.N.Y.1989).

The courts have further defined this "substantial and material consideration" standard of *White Motor* to exclude from mandatory withdrawal those cases which involve only the application of non-title 11 federal statutes to a particular set of facts. They have done so in order that Section 157(d) is construed narrowly and "does not become an 'escape hatch' for matters properly before court." *In re Johns–Manville Corp.,* 63 B.R. 600, 603 (S.D.N.Y.1986) (Leval, J.). Thus:

> It would seem incompatible with congressional intent to provide a rational structure for the assertion of bankruptcy claims to withdraw each case involving the straightforward application of a federal statute to a particular set of facts. It is issues requiring significant interpretation of federal laws that Congress would have intended to have decided by a district judge rather than a bankruptcy judge.

*Id.* at 602.

This approach was also followed to deny mandatory withdrawal in *In re Texaco,* 84 B.R. 911 (S.D.N.Y.1988) (Goettel, J.). There, the debtor sought to assume agreements with the State of Louisiana with respect to certain oil and gas leases covered by a complex non-Title 11 federal law, the Natural Gas Policy Act of 1978. After referring the motion to withdraw to Judge Schwartzberg of the Bankruptcy Court for report and recommendation, the Court upheld Judge Schwartzberg's recommendation that the motion be denied. Mandatory withdrawal was not required because resolution of the dispute would not require the court to do more than make routine interpretations of non-Title 11 federal law in order to apply that law to the facts in the case before it. *Id.* 84 B.R. at 914.

On the occasions when this Court grants motions for mandatory withdrawal, it has generally done so when complicated interpretive issues, often of first impression, have been raised under non-Title 11 federal laws. Thus, in *In re Combustion Equipment Associates, Inc.,* 67 B.R. 709 (S.D.N.Y.1986) (Sand, J.), and *American Telephone & Telegraph Co. v. Chateaugay Corp.,* 88 B.R. 581 (S.D.N.Y.1988), the Court was faced with issues of first impression under a relatively new, complex, and recently amended statute, CERCLA, 42 U.S.C. § 9607. Perhaps just as important to the removal determinations in these cases was that the proceedings presented and required resolution of "substantial and material conflicts" between non-title 11 federal laws and the Bankruptcy Code. *See In re Combustion,* 67 B.R. at 711; *Chateaugay Corp.,* 88 B.R. at 588. Of similar effect is *Pension Benefit Guaranty Corp. v. The LTV Corp.,* 86 B.R. 33, 38–39 (S.D.N.Y. 1987), where issues of first impression under ERISA "were presented in sharp conflict with competing provisions of the Code."

In the only case cited by the parties involving the question of mandatory withdraw in an adversary proceeding brought primarily under the Lanham Act, the Honorable Robert J. Ward found that applying the Lanham Act to a complicated set of facts would require substantial and material consideration of issues under the Act, including whether the marks are protectable, to what degree if any, protection is needed, and issues regarding the likelihood of confusion and thus was appropriate for mandatory withdrawal under the established case law. *In re McCrory Corporation v. 99¢ Only Stores,* 160 B.R. 502 (S.D.N.Y 1993).

■ The Lanham and Tariff Act claims in this case do not appear extraordinarily complicated. In the absence of particularly complex issues, a case of first impression or a conflict between non-Title XI federal law and the Bankruptcy Code, withdrawal in this case is not mandated.

Even if mandatory withdrawal is not required, an adversary proceeding can be removed to district court under the permissive withdrawal section of 157(d). Given the facts

of this case and its current posture, the vast majority of the case will remain in this Court.

**Permissive Withdrawal**

Under 28 U.S.C. § 157(d), a "district court may withdraw ... any case or proceeding referred [to the bankruptcy court] on its own motion or on a timely motion of any party, for cause shown." In fact, this case was withdrawn by the parties on consent more than three months ago, and defendants originally moved for the withdrawal only one week after the adversary proceeding was filed. In that time the parties have appeared before this Court on several occasions, the Court has heard the parties argue this withdraw issue twice, reviewed the settlement agreement with the non-ACB defendants and reviewed extensive briefings on the pending motions and heard several hours of argument.

■ In the event that a party moves to withdraw an adversary proceeding in the first instance, the Court of Appeals has held that district courts in this circuit should consider a number of factors in evaluating the cause for withdrawal: whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law. *Orion Pictures Corp. v. Showtime Networks Inc.*, 4 F.3d 1095 (2d Cir.1993) (citing with approval *In re Kenai Corp.*, 136 B.R. 59, 61 (S.D.N.Y.1992) (factors include whether action is core or non-core and issues of "(1) judicial economy, (2) uniform bankruptcy administration, (3) reduction of forum shopping, (4) economical use of debtors' and creditors['] resources, (5) expediting the bankruptcy process, and (6) the presence of a jury demand"); *In re Century Brass Prods., Inc.*, No. 2:91–79, 1992 WL 22191, at *3, 1992 U.S.Dist. LEXIS 1277, at *8 (D.Conn. Jan. 7, 1992) (promotion of uniformity in bankruptcy administration, judicial economy, and the Bankruptcy Court's knowledge of the facts warranted denying motion to withdraw reference); *In re Mountain View Coach Line, Inc.*, 1989 WL 129479, at *1, 1989 U.S.Dist. LEXIS 12698, at *2 (S.D.N.Y. Oct. 24, 1989) (court should consider whether matter is core or non-core and issues of judicial economy);

*In re Wedtech Corp.*, 94 B.R. 293, 296 (S.D.N.Y.1988) (uniformity, forum shopping, efficiency, and jury trial considerations all are relevant); *see also Holland America Ins. Co. v. Roy*, 777 F.2d 992, 999 (5th Cir.1985) ("The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process."); 1 Collier on Bankruptcy P 3.01[2][e], at 3–64.), *cert. dismissed*, —— U.S. ——, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994).

Although core proceedings are not statutorily defined, section 157(b)(2) offers a nonexclusive list of such actions. *In re Mountain View Coach Line, Inc*, 1989 WL 129479 (S.D.N.Y.). The determination of the applicability of these factors is not a straightforward task.

"[A] proceeding is encompassed within the bankruptcy court's core ... 'if it invokes a substantive right provided by title 11 or if it is a proceeding that, by nature could arise only in the context of a bankruptcy case.'" *McCrory Corporation*, 160 B.R. at 506 (quoting *Silverman v. General Ry. Signal Co.*, 144 B.R. 244, 249 (Bankr.S.D.N.Y.1992) (quoting *Wood v. Wood*, 825 F.2d 90, 97 (5th Cir. 1987))). This is not a case that could arise only in the context of a bankruptcy case. It is the sort of trademark and unfair competition case that arises all the time. However, this does not end the inquiry.

The Court of Appeals affirmed that in general post-petition contract claims are core. *In re Ben Cooper, Inc.*, 896 F.2d 1394 (2d Cir.1990), in that they are integral to the estate management from the date they are entered into. Insofar as the adversary proceeding involves claims regarding activities post-petition, between parties before the Bankruptcy Court, they are core. "Moreover, the majority of courts that have considered the issue have held that proceedings to determine the allowance and disallowance of claims against the estate are core. *In re Manville Forest Products Corp.*, 896 F.2d 1384 (2d Cir.1990) (citations omitted). Insofar as the claims asserted here are between

parties in the Bankruptcy Court and their resolution determines the allowance and disallowance of claims against the state, they are core. Insofar, however, that they involve pre-petition acts of the debtor and parties not present in the Bankruptcy proceedings, the issues are not core.

According to the Court of Appeals, a district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn. *Orion,* 4 F.3d at 1100. This is not wholly determinative, however. Rather, once a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors.

■ This adversary proceeding contains core and non-core claims. At oral argument, Houbigant admitted that the presence of non-debtors presented a wrinkle to the determination of core. While arguing that many of the third party defendants would seek indemnity from Houbigant in the event that they were found liable, Houbigant reserved its right to contest a duty to indemnify against Chemical, PPI, CTC and Robinson, thus further attenuating the relationship of the claims against these parties from the bankruptcy proceeding.

Other than the core/non-core issue, in the peculiar posture of this case, several of the other factors to be considered weigh heavily in favor of leaving the case here. The concern about forum shopping alone, almost compels the Court to keep the case here. Houbigant admits that after its settlement with the non-ACB defendants it had most of the relief it wanted in terms of its trademark and Lanham Act claims. Now, for its own reasons Houbigant wants the case back in Bankruptcy Court. While Houbigant claims that the "landscape" has changed, only the names of the other parties have changed. In its current configuration the action has par-

ties not involved in the proceedings in bankruptcy, at least four of whom Houbigant says it will challenge the duty to indemnify. The claims are the same as those in the original proceeding, with additional federal claims added as counterclaims.

Because at this time this Court is familiar with the facts of this case, has had the parties before it several times, the resources of the creditors or debtors will not be further taxed if this Court decides the issues that are before it, since they have already been fully briefed and argued. If after reviewing the motions to dismiss, the case is modified significantly, the Court can remand the remaining issues to the Bankruptcy Court as appropriate.[4]

"A proceeding is encompassed within the bankruptcy courts core ... 'if it invokes a substantive right provided by title.'" The Court of Appeals has held that the constitution prohibits bankruptcy courts from holding jury trials in non-core matters. *Orion,* 4 F.3d at 1101. Insofar as the third party claims and requests for equitable relief are non-core, there is the possibility that separate trials would be required on portions of this claim. This would be a waste of both Courts' time. Furthermore, at this point in time, this Court is quite familiar with these facts and these parties, is quite familiar with the law of trademark, unfair competition, the Lanham Act and related issues found in the Complaint and the counter claims.

Finally, since the action is currently before this Court on consent, and since the Court finds that while the contours of the originally removed action are not qualitatively changed from the action that was removed from bankruptcy, the parties having cited no authority that in this circumstance the District Court is compelled to remand the proceeding, so as to avoid further forum shopping and further briefing in the Bankruptcy Court, this Court will retain jurisdiction over these proceedings.

---

**4.** A hearing was held on August 10 before the Honorable James Garrity which, according to the plaintiffs, addressed many of the same issues that were heard by this Court on the motions to dismiss. Thus positioning this case so that both the District Court and the Bankruptcy Court are fully familiar with the issues in these proceedings.

In addition to being appropriate for permissive withdrawal, ACB's argument that Houbigant having agreed to the withdrawal in the first instance is estopped from seeking remand now is appealing. In *In re Braniff Int'l Airlines, Inc.*, 159 B.R. 117, 126 (E.D.N.Y.), the District Court held that "where a trustee in bankruptcy has elected to pursue litigation in a forum other than the bankruptcy court, he is estopped from requesting a later referral to the bankruptcy court." In this case, however, there had been changes in the circumstances of the adversary proceeding since Houbigant first consented to the withdraw. While these changes did not alter the Court's decision to retain the action, they do render the defendant's assertion of estoppel unavailable.

This Court will remand to the Bankruptcy Court the issues of administrative time bars, for a ruling by the Bankruptcy Court that has special expertise in that arena and has already held a hearing on these issues.

### Conclusion

For the reasons described above, the motion to reinstate the adversary proceeding to Bankruptcy Court is denied. The Court will remand the issues of time-bar based on bankruptcy rules to Judge James L. Garrity for his ruling.

It is so ordered.