Raymond **WECHSLER**, Administrative Trustee, Plaintiff,

v.

**SQUADRON, ELLENOFF, PLESENT, & SHEINFELD LLP**, Defendant.

Nos. 93 Civ. 0810 (WK) (AJP), 96 Civ. 4115 (WK) (AJP).

United States District Court, S.D. New York.

Sept. 4, 1996.

---

Daniel C. Girard, Girard & Green, San Francisco, CA, for Plaintiff in No. 93 Civ. 0810 (WK) (AJP).

Joseph E. Coughlin, Lord Bissell & Brook, Chicago, IL, for Defendant in No. 93 Civ. 0810 (WK) (AJP).

Richard Mancino, Willkie Farr & Gallagher, New York City, for Plaintiff in No. 93 Civ. 4115 (WK) (AJP).

Philip S. Kaufman, Kramer, Levin, Naftalis & Frankel, New York City, for Defendant in No. 93 Civ. 4115 (WK) (AJP).

*MEMORANDUM AND ORDER*

WHITMAN KNAPP, Senior District Judge.

Presently before the Court is Magistrate Judge Andrew Peck's August 15, 1996 Report and Recommendation that the Court grant the defendant's motion to withdraw the reference to the Bankruptcy Court for this case.

No objections to the Report and Recommendation have been filed. In the interests, therefore, of judicial economy, and because we find it eminently reasonable, we affirm the Report and Recommendation in its entirety.

SO ORDERED.

*REPORT AND RECOMMENDATION*

TO THE HONORABLE WHITMAN KNAPP, United States District Judge:

The Administrative Trustee of the bankrupt Towers Financial Corporation brought suit in Bankruptcy Court (Case No. 93–B–41558) against the law firm of Squadron, Ellenoff, Plesent & Sheinfeld ("Squadron Ellenoff"), alleging malpractice, breach of fiduciary duty and breach of contract. Squadron Ellenoff moves this Court to withdraw the reference to the Bankruptcy Court and the motion has been referred to me by Judge Knapp for a Report and Recommendation.

This Court and the District Court are intimately familiar with the facts of this case through the related case of *In re Towers Financial Corp. Noteholders Litig.*, 93 Civ. 0810, 1995 WL 571888 (S.D.N.Y. Sept. 20, 1995) (Peck, M.J.), *aff'd*, 936 F.Supp. 126 (S.D.N.Y.1996) (Knapp, J.), familiarity with which is assumed. (Collectively "the Noteholders' litigation"; defined terms from that Report and Recommendation are used herein.) In the Noteholders' litigation, this Court recommended, and Judge Knapp affirmed, dismissal of the Noteholders' claims against Squadron Ellenoff for SEC Rule 10b–5 liability, with leave to replead a "conspiracy" claim against Squadron Ellenoff. For reasons of judicial economy, as more fully explained below, I recommend that the District Court withdraw the reference to the Bankruptcy Court for this case.

*FACTS*

***The Noteholders' Litigation Against Squadron Ellenoff***

In brief, investors in Towers Notes sued, *inter alia*, the law firm of Squadron Ellenoff in a class action alleging that Squadron Ellenoff had participated in a far-reaching "Ponzi scheme" carried out by Towers, designed to deceive the plaintiff class into purchasing Towers Notes. *In re Towers*, 1995 WL 571888 at *1. The investors alleged that Squadron Ellenoff, which represented Towers and its officials at SEC hearings, had committed fraud on the investors by failing to disclose information regarding the Ponzi scheme to the SEC and the investors. As this Court summarized in *In re Towers*:

> Defendant Squadron Ellenoff is a New York based law firm that served as counsel to Towers and defendants Hoffenberg and Brater and represented Towers before the SEC and other regulatory agencies. (Cplt. ¶¶ 54, 357.) In the course of representing Towers before the SEC in 1988, Squadron Ellenoff received access to a confidential memorandum prepared by the accounting firm of Spicer & Oppenheim that revealed Towers' fraudulent accounting practices, but "Squadron Ellenoff went on to continue through various means," including making or failing to correct false statements to the SEC, "to sustain Towers' criminal course of conduct throughout the ensuing four years." (Cplt. ¶ 361; *see also id.* ¶¶ 357–404.) "By the false statements made to the SEC and others, Squadron Ellenoff intended to prevent or delay, and did delay, the SEC from stopping Towers . . . from selling Notes." (*Id.* ¶ 401.)

1995 WL 571888 at *3. The Noteholder plaintiffs' claims against Squadron Ellenoff included: Rule 10b–5 securities fraud, negligent misrepresentation, breach of fiduciary duty and common law fraud. *Id.* at *7.

In my Report and Recommendation dated September 20, 1995, I recommended that the Court dismiss all claims against Squadron Ellenoff because, *inter alia*, the firm had no duty to disclose such information to investors, and the Noteholder plaintiffs did not

allege reliance on any false statement by Squadron Ellenoff. 1995 WL 571888 at *16–24. Judge Knapp affirmed on August 1, 1996, *In re Towers*, 936 F.Supp. at 126, but allowed plaintiffs to amend to assert a "conspiracy" claim against Squadron Ellenoff, *id.* at 126–30.

### The Trustee's Action Against Squadron Ellenoff

On April 1, 1996, Raymond H. Wechsler, Towers' Administrative Trustee, commenced this action in Bankruptcy Court against Squadron Ellenoff, alleging claims of: (1) attorney malpractice (Bankr.Cplt. ¶¶ 32–38); (2) breach of Squadron Ellenoff's implied contract with Towers to exercise due care in providing legal services (Bankr.Cplt. ¶¶ 39–44); and (3) breach of fiduciary duty for failing to act in the best interests of Towers as opposed to Towers' officers and directors. (Bankr.Cplt. ¶¶ 45–51.)

The Trustee's complaint asserts that "[f]rom at least 1988 until the commencement of Towers' chapter 11 cases, every business in which Towers was engaged was permeated with fraud personally overseen and directed by [Stephen] Hoffenberg [Towers' CEO] and his cohorts." (Bankr.Cplt. ¶ 6.) The Trustee further alleges that Hoffenberg "made it appear as though Towers' collection business was profitable by creating a wholly fictitious 'accounting rule' which generated illusory income, asset value and net worth." (*Id.*) The "accounting rule," known as the "30/30 rule," permitted Towers "to claim that it recognized its fees as 30 percent of the amount expected to be collected, thus implying that the recoverable reserve purportedly based on historical experience was 70%." (Bankr.Cplt. ¶ 7.)

In or about 1988, Towers retained the "accounting firm of Spicer & Oppenheim to identify support for ... the 30/30 rule." (Bankr.Cplt. ¶ 9.) The Spicer & Oppenheim report "questioned the validity of the 30/30 rule and raised serious questions about Hoffenberg and his accomplices." (Bankr.Cplt. ¶ 10.)

Squadron Ellenoff began its representation of Towers and Hoffenberg in or about 1988 and continued the representation until at least March 24, 1993. (Bankr.Cplt. ¶ 17.) The Trustee contends that, in the course of its representation of Towers, Squadron Ellenoff became aware of the Spicer & Oppenheim Report "and knew or should have known, its contents." (Bankr.Cplt. ¶ 19.) Additionally, the Trustee alleges that, in the course of the SEC investigation, Squadron Ellenoff responded to inquiries and subpoenas from the SEC. (Bankr.Cplt. ¶ 21.) Squadron Ellenoff "met and conferred frequently" with Hoffenberg and other Towers' officers and, despite "being on notice that information provided to them by Hoffenberg and [others] was either unreliable, ... or patently false and misleading," Squadron Ellenoff provided such false information to the SEC. (Bankr.Cplt. ¶ 22.)

The Trustee's complaint further asserts that

> At no point in time did any member of Squadron Ellenoff bring Hoffenberg's or his associates' fraudulent or improper activity to the attention of those who may have been able to effectuate a cessation of this behavior before any greater liability of Towers as an entity was incurred. Nor did they refuse to employ the unreliable and false information in their submissions to the SEC.
>
> Instead, Squadron Ellenoff aggressively sought to protect Hoffenberg and others from liability or scrutiny by the SEC. Throughout this period, Squadron Ellenoff was paid by Towers, even though its actions did not benefit Towers, but rather harmed it.

(Bankr.Cplt. ¶¶ 26–27.)

Finally, the Trustee asserts that "Squadron Ellenoff's desire to protect Hoffenberg and his associates from liability, at the expense of Towers, permitted Hoffenberg to continue perpetrating the Ponzi scheme and increased the liability of its client corporation to the investing public, the SEC and others." (Bankr.Cplt. ¶ 28.) The Trustee alleges that "Squadron Ellenoff's ability to delay the inevitable discovery of the Ponzi scheme, while simultaneously neglecting to advise Towers of the manifestations thereof, served to increase the number of defrauded investors and Towers' ultimate liability." (Bankr.Cplt. ¶ 29.)

The Trustee alleges that Towers suffered "damages in excess of $15 million." (Bankr. Cplt. ¶ 31.)

## ANALYSIS
### THE DISTRICT COURT SHOULD WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT IN THE INTERESTS OF JUDICIAL ECONOMY

"The district court may withdraw, in whole or in part, any case or proceeding referred [to the Bankruptcy Court] under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Although § 157(d) does not define what constitutes "cause,"

> District courts in this circuit have considered a number of factors in evaluating cause: whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law.

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures)*, 4 F.3d 1095, 1101 (2d Cir.1993), *cert. dismissed*, — U.S. —, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994).

### A. *This Case is a Non–Core Proceeding*

As the Second Circuit stated in *Orion Pictures*, "[a] district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." 4 F.3d at 1101.

Section 157 distinguishes between "core" an "non-core" or "related" bankruptcy proceedings. While bankruptcy judges may "hear and determine ... all core proceedings arising under title 11, or arising in a case under title 11," 28 U.S.C. § 157(b)(1), any decision a bankruptcy court makes in a non-core proceedings is subject to de novo review by the district court. 28 U.S.C. § 157(c)(1); *see also, e.g., Orion Pictures*, 4 F.3d at 1101.

■ Section 157(b)(2) lists various types of core proceedings, all generally involving matters that "would have no existence outside of the bankruptcy case." *J.T. Moran Finan-*

*cial Corp. v. American Consolidated Financial Corp. (In re J.T. Moran Fin. Corp.)*, 124 B.R. 931, 937 (Bankr.S.D.N.Y.1991) (citing cases). "A core proceeding must invoke a substantive right provided by title 11." *Id.* On the other hand, non-core proceedings "involve disputes over rights that ... have little or no relation to the Bankruptcy Code, do not arise under the federal bankruptcy law and would exist in the absence of a bankruptcy case." *J. Baranello & Sons, Inc. v. Baharestani (In re J. Baranello & Sons, Inc.)*, 149 B.R. 19, 24 (Bankr.E.D.N.Y.1992).

■ This case clearly is a non-core proceeding. Certainly this case could exist independent of the bankruptcy case, since the claims are state law claims. *See Interconnect Telephone Services, Inc. v. Farren*, 59 B.R. 397, 400 (S.D.N.Y.1986) ("Noncore proceedings consist of those 'claims arising under traditional state law which must be determined by state law.' ... They are 'those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or state court.' ").

■ Moreover, all of the alleged acts that form the basis of the Trustee's claims against Squadron Ellenoff took place before Towers entered bankruptcy. (See Bankr.Cplt. ¶¶ 3, 17.) Thus, both the formation of the contract (for Squadron Ellenoff to provide legal services to Towers and Hoffenberg) and the alleged breach of contract and malpractice occurred in the period preceding Towers' filing for bankruptcy protection. A "breach-of-contract action by a debtor against a party to a pre-petition contract ... is non-core." *Orion Pictures*, 4 F.3d at 1102; *see also, e.g., Burger Boys, Inc. v. South Street Seaport Ltd. Partnership (In re Burger Boys, Inc.)*, 183 B.R. 682, 687 (S.D.N.Y.1994) (action involving a pre-petition contract and pre-petition breach of contract is a non-core proceeding); *Private Capital Partners, Inc. v. RVI Guaranty Co. (In re Private Capital Partners, Inc.)*, 139 B.R. 120, 127 (Bankr. S.D.N.Y.1992) ("it is settled law in this court that a garden variety prepetition breach of contract case invokes no substantive principles of bankruptcy law and is a non-core proceeding.") (citing cases).

Thus, the Court finds that this pre-petition breach of contract case is a non-core proceeding.[1]

█ The finding that this is a non-core proceeding is "not wholly determinative" of whether the reference should be withdrawn. *Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 185 B.R. 680, 686 (S.D.N.Y.1995). The fact that the case is a non-core proceeding, however, weighs in favor of the District Court's withdrawal of the reference, since any determination by the Bankruptcy Court would be subject to de novo review. *See, e.g., In re Orion*, 4 F.3d at 1101 ("the fact that a bankruptcy court's determination on non-core matters is subject to de novo review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court.").

█ The Court must now "weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Houbigant v. ACB Mercantile*, 185 B.R. at 686.

## B. *Judicial Resources are Best Served By Allowing the District Court to Hear this Case Given the Court's Knowledge of the Underlying Facts*

█ Another factor strongly weighing in favor of withdrawal of the reference is that the district court is intimately familiar with the facts underlying this case and thus is uniquely qualified to conduct discovery and ultimately trial on this case, or to dispose of the case by motion to dismiss. (Squadron Ellenoff has filed a motion to dismiss this action.)

The Trustee's complaint against Squadron Ellenoff and the Noteholders' complaint against Squadron Ellenoff both arise from the same set of facts. Both complaints base their liability on the same alleged Squadron Ellenoff conduct, namely: (1) Squadron Ellenoff's knowledge of the contents of the Spicer

& Oppenheim Memo (Bankr.Cplt. ¶¶ 19–20; Noteholder Cplt. ¶¶ 357–61); (2) Squadron Ellenoff's representation of Towers and Hoffenberg before the SEC (Bankr.Cplt. ¶¶ 21–22; Noteholder Cplt. ¶¶ 371–76); (3) Squadron Ellenoff partner Ira Sorkin's correspondence with the SEC (Bankr.Cplt. ¶¶ 23–25; Noteholder Cplt. ¶¶ 370, 377–82, 397); and (4) Squadron Ellenoff's delay of the discovery of the Ponzi scheme (Bankr.Cplt. ¶¶ 29–30; Noteholder Cplt. ¶¶ 371–76).

As previously noted, on August 1, 1996, Judge Knapp affirmed my 73–page Report and Recommendation recommending dismissal of Squadron Ellenoff in the Noteholders' litigation. *In re Towers*, 936 F.Supp. at 127–28. Judge Knapp heard oral argument on that motion and expended time and effort in rendering his opinion. This Court also spent significant time reviewing the parties' briefs, writing that Report and Recommendation, and writing other Reports and Recommendations, Opinions and Orders in the Noteholders' litigation. Given the fact that the District Court is so familiar with the facts and legal theories contained in both complaints, judicial economy suggests that the District Court should hear this case against Squadron Ellenoff. *See, e.g., Houbigant v. ACB Mercantile*, 185 B.R. at 686 (refusing to restore reference to the bankruptcy court where district court already familiar with the relevant facts by virtue of prior related cases); *Wedtech Corp. v. London (In re Wedtech Corp.)*, 81 B.R. 237, 239 (S.D.N.Y.1987) (where a proceeding in bankruptcy involves common issues of law and fact with a case pending in district court, "the overlapping of facts, transactions and issues in the two cases . . . is good cause for withdrawal of the reference and consolidation with the district court proceeding").

Withdrawal of the reference makes particular sense here where Squadron Ellenoff has filed a motion to dismiss the complaint. (The motion is awaiting the Trustee's response.) Based on a preliminary review of Squadron's moving papers, there appears to be an overlap of issues between the motion to dismiss

---

1. The Trustee "neither concedes nor contests the characterization of this adversary proceeding as non-core." (Trustee Br. at 7 n. 2.)

and issues that the District Court has faced in ruling on Squadron's motion to dismiss and other motion practice in the Noteholders' litigation. In any event, the issues raised in the motion are state law issues, not bankruptcy issues, which are more appropriately heard in the District Court.[2]

Moreover, if Squadron Ellenoff's motion to dismiss is denied, it makes sense for this Court to oversee any necessary discovery, since this Court has been coordinating the consolidated discovery in the Noteholders and other related *Towers* litigations from the start. Consolidation of this case with the other *Towers'* discovery would eliminate the need to repeat document discovery or re-take depositions. This is especially true if the Noteholder plaintiffs are able to assert a conspiracy claim against Squadron Ellenoff as a result of Judge Knapp's recent decision.

The Trustee argues that "the pendency of the Fraudulent Conveyance Action in Bankruptcy Court weighs against withdrawing the reference in this case," since that would result in the litigation of two factually related cases in two different courts. (Trustee Br. at 8–9.) It is true that "an action for fraudulent conveyance is a core proceeding" wholly within the jurisdiction of the bankruptcy court. *See, e.g., Wedtech Corp. v. London,* 81 B.R. at 239.

However, the facts of the fraudulent conveyance case and the damages sought appear to be wholly separable from the facts and significantly greater damages alleged in this case. (*See* Kaufman Aff. Ex. 4: "Complaint to Avoid and Recover Preferential and Fraudulent Transfers.") In the fraudulent conveyance action, the Trustee seeks to recover approximately $660,000 in legal fees paid by Towers to Squadron Ellenoff between January 3, 1993 and March 24, 1993 (Fr.Conv.Cplt. ¶ 7), while the malpractice ac-

tion refers to legal services rendered by Squadron Ellenoff between 1988 and February 8, 1993, and seeks over $15 million in damages. (Bankr.Cplt. ¶¶ 14, 17.) Thus, the two actions are based on different factual grounds, covering mostly non-overlapping time periods, and with vastly different amounts at stake. Moreover, the Court notes that while the fraudulent conveyance action was commenced in March 1995, the Trustee does not appear to have moved the action forward. In any event, any overlap between the fraudulent conveyance action and this case is minor compared to the overlap between this case the Noteholders' litigation in the District Court.[3]

### C. *The District Court Should Hear This Case to Avoid Forum Shopping*

The Court also finds that it is in the interest of the prevention of forum shopping that this case be litigated by the District Court. It is more than coincidental that this action was filed in the Bankruptcy Court shortly after this Court's Report & Recommendation that the Noteholder plaintiffs' suit against Squadron Ellenoff be dismissed. It is also noteworthy that the Trustee and the Noteholder plaintiffs' counsel have a cooperation and judgment sharing agreement. (*See* Kaufman Aff.Exs. 6–7.). In this Court's view, it appears that the Trustee filed this action in order to avoid the outcome of this Court's dismissal of Squadron Ellenoff from the Noteholders' litigation.

Although the Trustee levels the same accusation against Squadron Ellenoff, even if both sides are guilty of forum shopping, as Judge Mukasey commented in *LTV Steel Co. v. Union Carbide Corp. (In re Chateaugay Corp.),* "[w]hen, as here, each side has run to its favorite courthouse, 'the courts should be

---

**2.** If after reviewing Squadron's motion to dismiss the matter seems more appropriate for bankruptcy court determination, the "Court can remand ... to the Bankruptcy Court as appropriate." *Houbigant v. ACB Mercantile,* 185 B.R. at 686.

**3.** The Court also rejects the Trustee's argument that the pendency of the Trustee's "omnibus" proceedings against the Towers insiders and the outside accounting firm (alleging fraud, breach of fiduciary duty, conversion, RICO violations,

and violation of federal securities laws) weighs against the withdrawal of the bankruptcy referral. (Trustee Br. at 15.) The Trustee also does not appear to have moved that proceeding very far. As with the fraudulent conveyance action, the District Court's well-developed knowledge of the facts and law concerning Squadron Ellenoff's representation of Towers outweighs any overlap with matters pending in the Bankruptcy Court.

concerned with what the interests of justice require and not with who won the race.'" 193 B.R. 669, 678 (S.D.N.Y.1996) (quoting *National Patent Dev. Corp. v. American Hosp. Supply Corp.,* 616 F.Supp. 114, 118 (S.D.N.Y.1984) (Weinfeld, J.)); *see also McCrory Corp. v. 99 Cents Only Stores (In re McCrory Corp.),* 160 B.R. 502, 507 (S.D.N.Y.1993) (when both sides have engaged in forum shopping, that issue is not dispositive).

This Court finds that it is in the interests of justice and judicial economy that the District Court hear the related Trustee action against Squadron Ellenoff rather than the Bankruptcy Court.

### *CONCLUSION*

For the reasons set forth above, I recommend that the Court exercise its discretion and withdraw the reference of the Trustee's action to the Bankruptcy Court.

### *FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Whitman Knapp, 40 Centre Street, Room 1201, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Knapp. Failure to file objections may result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59

(2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

DATED:

Respectfully submitted,

/s/ <u>Andrew J. Peck</u>
 Andrew J. Peck
 United States Magistrate Judge