**In re Rick L. LANE Nancy W. Lane, Debtors.**

**Bankruptcy No. 87–71171.**

United States Bankruptcy Court, C.D. Illinois.

Nov. 21, 1988.

Barry M. Barash, Galesburg, Ill., for debtors.

James A. Lewis, Asst. U.S. Atty., Springfield, Ill., for Agr. Stabilization & Conservation Service.

Donald R. Tracy, Springfield, Ill., Trustee.

## OPINION

LARRY L. LESSEN, Chief Judge.

The issues before the Court are whether the Debtors assumed the 1987 Feed Grain contracts administered by the Agricultural Stabilization and Conservation Service ("ASCS"), and whether the ASCS either waived or should be estopped from arguing nonassumption because it gave the Debtors a loan following confirmation of the Chapter 12 plan.

On March 27, 1987, the Debtors enrolled their farms in the 1987 Feed Grain Program administered by ASCS. In the contracts signed on this date, the Debtors agreed to plant 325.6 acres of corn. In addition, the Debtors agreed to set aside 75.2 acres of land on which they would plant a cover crop. In this case, the cover crop was oats. The contracts required that the cover crops be maintained and protected from weeds, insects, rodents, and wind and water erosion through December 31, 1987. The contracts further required that the land not be grazed or mechanically harvested throughout the year. For its part, ASCS agreed to pay the Debtors diversion payments—payments to compensate the Debtors for allowing the diverted acres to lie fallow—and deficiency payments—payments to compensate the Debtors for submarket corn prices in a period covering the 1987 crop year.

Participation in the Feed Grain Program also made the Debtors eligible for a loan under the government loan program. Under the loan program, a farmer may obtain a non-recourse loan from ASCS which is secured by a commodity. The amount of the loan is determined by a certain loan rate per bushel which is set by ASCS. This loan process is commonly referred to as "sealing." The effect of sealing is price protection for the farmer. If the market price of the commodity does not reach the sealing price, the farmer may forfeit the grain to the government without additional liability. If the market price of the commodity exceeds the sealing price, the farmer may sell the commodity and repay the loan. A farmer must be in the Feed Grain Program in order to be eligible for a loan. However, once a farmer is in the loan program, it is not necessary that he remain in the Feed Grain Program. A default in the Feed Grain Program does not constitute a default on the loan program.

The Debtors planted the corn acres and planted the oat cover crop on the diverted acres as required by the Feed Grain contracts in May, 1987.

On July 7, 1987, the Debtors filed a petition for reorganization under Chapter 12 of the Bankruptcy Code.

On July 31, 1987, the Debtors filed an application to approve a secured loan from ASCS. On August 5, 1987, the Court sent out notice of the application for the loan. On September 23, 1987, the Court entered an order allowing the Debtors to obtain the non-recourse loan from ASCS.

On November 2, 1987, the Court confirmed the Debtors' Chapter 12 plan.

On November 20, 1987, the Debtors obtained their loan from ASCS.

The Debtors' obligations under the Feed Grain Program expired on December 31, 1987.

On April 13, 1988; the Debtor wrote the Assistant United States Attorney seeking assistance in obtaining the 1987 corn deficiency payment which was being held up by ASCS. The Assistance United States Attorney replied as follows:

In response to your April 13th letter, ASCS informed me that the Chapter 12 plan was confirmed on November 2, 1987; neither you nor the Trustee took steps to assume the 1987 Feed Grain contract; therefore, the contract was considered to be rejected, and the payment was not considered to be earned; but the 1988 Feed Grain contract payment will be issued soon. Please let me know if you have a further question.

A visit by the Debtor to the Assistant United States Attorney prompted the following May 2, 1988, letter from the Assistant United States Attorney to the Debtor:

In response to your further question on April 29th, ASCS believes the 1987 Feed Grain contracts were executory because you entered into the contracts in March, 1987, filed bankruptcy on July 7, 1987, and substantially performed the contracts after filing.

On July 11, 1988, the Debtors filed a petition for rule to show cause. The Debtors alleged that they complied with each and every provision of their contracts with ASCS. Therefore, they argued that their performance was not executory. The Debtors sought a finding of contempt against ASCS and an order requiring ASCS to pay the Debtors the balances due them under the 1987 Feed Grain programs. ASCS responded that the Feed Grain contracts were in fact executory, and that they were not assumed. ASCS also noted that if the Feed Grain contracts were considered to be fully executed before filing bankruptcy, then the government would be entitled to set off the Feed Grain payments against the unsecured debt.

On July 29, 1988, the Debtors filed an amended petition for rule to show cause. The amended petition added the argument that the government's conduct in allowing the Debtors to seal their grain estops the government from arguing that the Debtors rejected the 1987 Feed Grain contracts. ASCS responded that the granting of the secured loan did not resolve the issue of the Debtors continuing obligations under the Feed Grain Program contracts.

A hearing on the show cause petition was held on August 18, 1988. At this hearing, the Debtors abandoned their argument that the contracts were fully performed. Conceding that the contracts were executory, the Debtors argued that the contracts were assumed by conduct and that the government was estopped from arguing nonassumption because the government granted them a new loan following the confirmation of their Chapter 12 plan.

This Court has previously noted the conflict in the case law on the necessity of filing a formal written motion as a condition precedent to the assumption of an unexpired contract. *In re Norton*, No. 86-71448, Adv. No. 86-7391 (Bankr.C.D.Ill. May 14, 1987). One line of cases holds that an unexpired contract may be assumed "by word or deed consistent with the conclusion that the Trustee intended to assume." *In re Re-Trac Corp.*, 59 B.R. 251, 255 (Bankr. D.Minn.1986). The opposing line of cases holds that a formal motion to assume is required. *In re Treat Fitness Center, Inc.*, 60 B.R. 878, 879 (9th Cir.B.A.P.1986). This Court has not chosen sides in this debate, and the facts in this case do not require the Court to decide which line of cases to follow. The Debtors admittedly did not file a motion to assume the Feed Grain contracts prior to the confirmation of the plan and the plan did not provide for the assumption of the contracts. 11 U.S.C. Secs. 365(d)(2) and 1222(a)(6). Moreover, even if this Court permitted the assumption of an executory contract without the filing of the proper motion, the facts in this case do not support such a finding. In order to informally assume an executory contract by conduct, it is not enough for the Debtors to simply show that they fully complied with the contract. Rather, they must clearly communicate in an "unequivocal manner" their intention to assume the contract. In addition, they "must manifest an unconditional and unambiguous decision." *In re 1 Potato 2, Inc.*, 58 B.R. 752, 755 (Bankr.D. Minn.1986). The Debtors in this case never communicated, either orally or in writing, their intention to assume the Feed Grain contracts. Although it is undisputed that the Debtors fully complied with the Feed Grain contracts after they filed their Chapter 12 petition, it must be remembered that their duties under the Feed Grain Program were essentially passive, and the Court does not view the Debtors' compliance with negative covenants to be an unequivocal manifestation of an "unconditional and unambiguous decision" to assume the contract. Therefore, the Court finds that the

Debtors did not assume the 1987 Feed Grain Program Contracts.

The next issue is whether ASCS either waived or should be estopped from arguing nonassumption because it gave the Debtors a loan following confirmation of the Chapter 12 plan. The Debtors rely on *In re Ranch House of Orange–Brevard, Inc.,* 78 B.R. 323 (Bankr.M.D.Fla.1987) to support their argument. In *Ranch House,* the creditors leased a tract of land to the debtor. The Bankruptcy Court originally ruled that the lease was expressly rejected when the debtor's plan of reorganization was confirmed without Court approval of the assumption of the lease by the debtor. The Eleventh Circuit Court of Appeals affirmed in part, but remanded the case for consideration of whether the doctrines of estoppel and waiver were applicable to the facts in the case. 773 F.2d 1166 (11th Cir.1985). On remand, the Bankruptcy Court noted that the creditors accepted payment of those sums necessary to cure defaults in the payment of rent that had accrued by the date of confirmation of the plan, accepted post-confirmation the continued payment of rent, and failed to take any act evidencing an intention to terminate the lease until over a year after the confirmation of the plan. Under these circumstances, the Court found that the creditors waived their right to treat the lease agreement as rejected. The Court further found that the debtor clearly intended to assume the lease, and that the failure to obtain a court order approving the assumption of the lease was partly attributable to one of the creditors. Therefore, the Court found that the creditors were estopped from treating the lease agreement as rejected.

■ The government responds that estoppel does not lie against the federal government or its agencies. *United States v. Medico Industries, Inc.,* 784 F.2d 840 (7th Cir.1986). However, this general rule is not as hard and fast as the government would lead us to believe. Estoppel is available against the government where a private party demonstrates the presence of the traditional elements of estoppel, and that the government has engaged in affirmative misconduct, or that a decision in the government's favor would work a manifest injustice. *Green v. U.S. Department of Labor,* 775 F.2d 964 (8th Cir.1985). *Cook v. Pension Benefit Guarantee Corp.,* 652 F.Supp. 1085 (S.D.N.Y.1987). In this case, the Court finds that a decision in the government's favor would unjustly enrich the government. It is undisputed that the Debtors fully performed their obligations under the Feed Grain contracts. Thus, the government received the full benefit of the contracts. Moreover, the government recognized the continuing validity of the Feed Grain contracts after the contracts were technically rejected by the confirmation of the reorganization plan. In order to be eligible for the loan program, the Debtors had to be in the Feed Grain Program. Therefore, when the government gave the Debtors their loan on November 20, 1987, the government was treating the Feed Grain contracts as valid. Under these circumstances, the government has waived its right to treat the Feed Grain contracts as rejected.

In sum, the Court finds that the 1987 Feed Grain contracts were executory, and that the Debtors failed to properly assume the contracts. However, since the government treated the lease as valid following the Debtors' rejection of the contracts in their plan of reorganization, the government waived its right to treat the contracts as rejected.

■ The lesson to be learned from this case is that the Court views Feed Grain contracts as executory contracts which must be assumed in the plan of reorganization. If a Feed Grain contract is not assumed, then it will be deemed rejected. Farmers should not expect the government to waive its right to treat a Feed Grain contract as rejected in the future. Unless a farmer assumes a Feed Grain contract pursuant to 11 U.S.C. Sec. 365(d)(2) or Sec. 1222(a)(6), it is highly unlikely that the government will grant a post-confirmation loan to the debtor.

For the foregoing reasons, ASCS is directed to pay the Debtors all balances due them under the 1987 Feed Grain Program.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.