In re HOUBIGANT, INC., et al., Debtors.

HOUBIGANT, INC. and Parfums
Parquet, Inc., Plaintiffs,

v.

ACB MERCANTILE, INC., ACB Fragrances and Cosmetics, Inc., Giacomo Giuliano, Augustine Celaya and Gilles Pellerin, V & B Distributors, Canada, Inc., Harold Schiff, A. Rosenblum Sales, Inc. and Rosenblum, Defendants.

ACB MERCANTILE, INC. and ACB
Fragrances and Cosmetics, Inc.,
Counterclaim–Plaintiffs,

v.

HOUBIGANT, INC., Parfums Parquet, Houbigant, (1995) Ltd. (f.k.a. 3088766 Canada, Ltd.), Michael Sherman, Luigi Massironi, Robert Graber, Thomas Bonoma, Renaissance Cosmetics, Inc., Kid Kamm & Company, CTC International Group, Ltd., Brad Robinson and Chemical Bank New Jersey N.A. (as agent for itself and National Westminster Bank U.S.A.), Counterclaim–Defendants.

Bankruptcy No. 93 B 45767 (JLG).
Adv. No. 95–8857A.

United States Bankruptcy Court,
S.D. New York.

Nov. 3, 1995.

As Corrected Nov. 8, 1995.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for Houbigant, Inc.

Marcus Montgomery Wolfson P.C., New York City, for ACB Mercantile, Inc. and ACB Fragrances and Cosmetics, Inc.

### MEMORANDUM DECISION ON CROSS-MOTIONS TO DISMISS

JAMES L. GARRITY, Jr., Bankruptcy Judge.

On remand from the District Court is a portion of Houbigant, Inc.'s ("Houbigant") motion pursuant to Fed.R.Civ.P. 12(b)(6) and 17 to dismiss certain counterclaims asserted on behalf of ACB Mercantile, Inc. and ACB Fragrances and Cosmetics, Inc. (collectively, "ACB") in this adversary proceeding. *See Houbigant, Inc. and Parfums Parquet, Inc. v. ACB Mercantile, Inc. et al. (In re Houbigant, Inc.)*, 185 B.R. 680 (S.D.N.Y.1995) (Sweet, J.). We consider whether certain of the counterclaims are time-barred by ACB's failure either to file or timely file proof of claims herein.

#### Facts

Houbigant is a Delaware corporation with its principal place of business in New York, New York. It is the parent of a group of domestic and foreign companies which marketed and distributed perfumes and toiletries worldwide. On November 18, 1993 (the "Filing Date"), Houbigant and certain of its affiliates (collectively the "debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code ("Code") in this district. Since that time they have continued in

possession and control of their businesses and assets as debtors in possession. *In re Houbigant, Inc.*, 185 B.R. at 681. Post-petition, Houbigant discontinued its design, marketing and distribution operations and became a trademark licensor. *Id.* By order dated on or about June 2, 1994, we authorized Houbigant to implement and effectuate a license agreement with Parfums Parquet, Inc. ("PPI"), then known as New Fragrance License Corp., pursuant to which, in exchange for royalty payments, Houbigant licenses to PPI certain patents, trademarks, trade names, and applications, as well as technical knowledge with respect to them. Under that agreement, PPI is Houbigant's exclusive licensee in the United States. *Id.*

On or about June 7, 1995 Houbigant filed its Third Amended Joint Plan of Reorganization (the "Plan"). By court order, its disclosure statement was approved and the confirmation hearing was scheduled for August 31, 1995. That hearing has been adjourned from time to time pending resolution of this adversary proceeding.

Pursuant to a series of agreements entered in April 1993 (collectively, the "ACB License Agreemént"), Houbigant granted ACB an exclusive license to manufacture, sell and distribute Houbigant's Parfums Parquet division fragrance products throughout the Territory of Canada and to use Houbigant's "trademarks" in connection therewith. *See* Counterclaims asserted on behalf of ACB in its Answer and Counterclaims, dated June 15, 1995 ("Counterclaim") at ¶ 23; *In re Houbigant, Inc.*, 185 B.R. at 681. Pursuant to an agreement dated on or about December 12, 1994 (the "Asset Purchase Agreement"), ACB conveyed substantially all its business, including the ACB License Agreement, to Houbigant (1995), Ltd. ("PPI Canada"). Counterclaim ¶ 70; *In re Houbigant, Inc.*, 185 B.R. at 681.

On or about April 4, 1995, Houbigant and PPI commenced this adversary proceeding in this Court alleging violations of the Lanham Act, common law and various statutes of the State of New York, seeking damages and to enjoin defendants from infringing upon rights in certain Houbigant trademarks, unfair competition and injuring their business reputations or diluting the distinctive quality of the trademarks. On or about April 11, 1994 the defendants moved by order to show cause to withdraw the reference of this litigation to the District Court. By stipulation among the parties, the April 14, 1995 return date of the motion was adjourned until May 17, 1995. On that date, the motion was granted on the consent of all parties. *In re Houbigant, Inc.*, 185 B.R. at 682.

On May 5, 1995, PPI–Canada commenced an action against ACB in Canada ("Canada Trademark Litigation") alleging that ACB sold products infringing Houbigant's trademarks. *In re Houbigant, Inc.*, 185 B.R. at 681–82. On May 26, 1995, Houbigant and PPI filed their First Amended Complaint (the "Complaint") in this litigation. It alleges seventeen (17) causes of action and names ACB, Augustine Celaya, Giacomo Giuliano (collectively the "ACB Defendants"), Gilles Pellerin, V & B Distributors, Harold Schiff, A. Rosenblum Sales, Inc., and Bernard Rosenblum as defendants. On or about June 16, 1995, ACB answered the Complaint and asserted counterclaims against Houbigant, PPI and the following third-party defendants: Luigi Massironi, Robert Graber, Thomas Bonoma, Renaissance Cosmetics, Inc., PPI Canada, Kidd Kamm & Company, CTC International Group, Brad Robinson, Chemical Bank New Jersey N.A., and Michael Sherman. *See* Counterclaim ¶¶ 1–217. The counterclaims allege: fraud (Count I), violations of the Canadian Trade-marks Act (Count II), breaches of fiduciary duties (Count III), breaches of covenants of good faith and fair dealing (Count IV), civil conspiracy to defraud (Count V), unfair competition under the Lanham Act (Count VI), injury to business under New York Business Law (Count VII), violation of New York Business Law regarding false advertising (Count VIII), common law unfair competition (Count IX), tortious interference with contracts (Count X), defamation *per se* (Count XI), defamation under the Canadian Trademarks Act (Count XII), contractual indemnification (Count XIII), indemnification implied in law (Count XIV), breaches of contract against Houbigant and PPI–Canada (Counts XV and XVI), and cancellation of trademarks

registrations under the Lanham Act (Count XVII). On or about July 14, 1995, the District Court (Martin, J.) approved a stipulation and order of settlement ("Settlement Agreement") between plaintiffs and the non-ACB Defendants. *In re Houbigant, Inc.,* 185 B.R. at 682.

We fixed April 15, 1994 (the "General Bar Date") as the last date for filing proof of unsecured claims against debtors, and January 31, 1995 (the "Administrative Bar Date") as the last date for filing proof of administrative expenses accruing on or after the Filing Date through June 30, 1994. *In re Houbigant, Inc.,* 185 B.R. at 682 n. 3. ACB filed the following claims:

(i) an unsecured claim for breach of the ACB License Agreement based upon Houbigant's purported failure to sell "hec" (perfume oil) to ACB at a required pricing formula (the "Hec Claim") [filed April 14, 1994];

(ii) an unsecured claim in the aggregate amount of $5 million based upon Houbigant's alleged breach of the exclusivity provisions of the ACB License Agreement in granting an entity known as Unilex, Ltd. ("Unilex") the right to sell certain Houbigant products worldwide, without territorial restriction, pursuant to the terms of an agreement (the "Unilex Agreement") between Unilex and one of Houbigant's foreign non-debtor subsidiaries (the "Unsecured Unilex Claim") [filed April 19, 1995];

(iii) an administrative claim that is identical to the Unsecured Unilex Claim, except for its assertion of administrative priority status (the "Unilex Administrative Claim") [filed April 19, 1995];

(iv) an administrative claim in the amount of $18 million seeking contractual and common law indemnification on account of the claims asserted by Houbigant and PPI against ACB in this adversary proceeding and an action commenced by PPI Canada against ACB in Canada (the "Indemnification Claim") [filed May 8, 1995]; and

(v) an administrative claim in excess of $6 million based upon alleged violation of Canadian trademark law (the "Trademark Claim") and Houbigant's alleged defamation of ACB (the "Defamation Claim") [filed May 24, 1995].

*In re Houbigant, Inc.,* 185 B.R. at 682–83.

Houbigant seeks an order pursuant to Fed. R.Civ.P. 12(b)(6) and 17(a) dismissing the counterclaims on the grounds that (1) all the causes of action asserted in the counterclaims were assigned to PPI–Canada pursuant to the Asset Purchase Agreement, thereby divesting ACB of standing to assert them; (2) Counts I–IV, VI–IX, XIII–XIV, XVII and portions of Counts V, X and XV of the counterclaims are time-barred by ACB's failure to file claims or to timely file claims on account of those counterclaims; (3) the late filed Unilex Unsecured Claim is an invalid amendment of the timely filed Hec Claim and, as an independent claim, is time-barred; (4) the Unilex Administrative Claim, Indemnification Claim, and Trademark Claim, encompassing Counts II and XIII–XV of the counterclaims, do not qualify for administrative expense status and therefore are time-barred general unsecured claims; and (5) each counterclaim is meritless.

On or about July 14, 1995, plaintiffs moved the District Court for an order remanding this adversary proceeding to this Court. They urged that the remand was appropriate due to the changed circumstances of the litigation, primarily the absence of the non-ACB Defendants and the substantial relief provided under the Settlement Agreement. ACB opposed that motion and the District Court denied it, except that it remanded "the issues of administrative time bars, for a ruling by the Bankruptcy Court that has special expertise in that arena and has already held a hearing on [those] issues." *In re Houbigant, Inc.,* 185 B.R. at 686.

The parties disagree on the scope of that order. Houbigant contends that the District Court remanded the issue of the timeliness of ACB's bankruptcy claims and the counterclaims filed in the adversary proceeding. It also urges that the issue of whether the Unilex Unsecured Claim is a valid amend-

ment of the Hec Claim has been remanded for our consideration and that we should consider whether the counterclaims, as well as the bankruptcy claims, qualify for administrative expense treatment. Houbigant reasons that we must reach the latter issue because it has argued that virtually all of the bankruptcy claims and counterclaims are time-barred general unsecured claims. ACB contends that we should not adjudicate the timeliness of all of ACB's counterclaims because there is no time bar issue respecting the counterclaims not the subject of a filed proof of claim. However, Houbigant's motion seeks dismissal of all counterclaims, not merely those encompassed within filed claims. ACB disputes that issues relating either to the amendment of the Hec Claim or the classification of the bankruptcy claims or counterclaims have been remanded to us. Both matters implicate issues regarding administrative time bars. Moreover, in his decision denying in part and granting in part the motions to dismiss claims, causes of action and parties, which we read as addressing all issues in the Complaint not remanded to us, Judge Sweet did not address those issues. *See Houbigant, Inc. and Parfums Parquet, Inc. v. ACB Mercantile, Inc., et al.,* 95 Civ. 2467, 1995 WL 608451 (S.D.N.Y. October 17, 1995). We will consider them herein.

### Discussion

■ In considering a 12(b)(6) motion, we must accept as true all of the well-plead facts alleged in the complaint. *See Square D Co. v. Niagara Frontier Tariff Bureau,* 476 U.S. 409, 411 106 S.Ct. 1922, 1924, 90 L.Ed.2d 413 (1986); *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57 (2d Cir.1985). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 Int'l Bhd of Elec. Workers,* 905 F.2d 35, 37 (2d Cir.1990). The motion should not be granted unless it appears with certainty that no set of facts could be established at trial which would entitle the plaintiff to any relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993) (citing *Conley v. Gibson* ); *Kolinsky v. Russ (In re Kolinsky),* 100 B.R. 695, 705 (S.D.N.Y.1989). Our analysis of this motion is informed by the allegations in the complaint, documents attached to the complaint as exhibits, or incorporated therein by reference, matters of which judicial notice may be taken, or documents either in plaintiff's possession or of which plaintiff relied on in bringing suit. *Brass v. American Film Technologies, Inc.,* 987 F.2d at 150 (citing *Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied sub nom. Cortec Indus. Inc. v. Westinghouse Credit Corp.,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992)); *In re Leslie Fay Companies, Inc.,* 166 B.R. 802, 808–09 (Bankr.S.D.N.Y.1994).

### Counts I, III–X and XVII

■ "The claims allowance process is an integral component of the court's equitable power to restructure debtor-creditor relationships." *In re Best Products Co., Inc.,* 140 B.R. 353, 356 (Bankr.S.D.N.Y.1992) (citing *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990), *reh'g. denied,* 498 U.S. 1043, 111 S.Ct. 721, 112 L.Ed.2d 709 (1991)). A principal purpose of the bankruptcy laws is to obtain a prompt and efficient administration and settlement of the debtor's estate within a limited amount of time. *Katchen v. Landy,* 382 U.S. 323, 328, 86 S.Ct. 467, 472, 15 L.Ed.2d 391 (1966). Bankruptcy Rule 3003(c) requires certain creditors in chapter 11 cases to file proofs of claim in order to participate in voting on or distribution under a plan of reorganization. Bankruptcy Rule 3003(c); *see In re Best Products Co., Inc.,* 140 B.R. at 356. To promote the finality of the proceedings, Rule 3003(c) provides that "[t]he court shall fix and for cause shown shall extend the time within which proofs of claim or interest may be filed." That time is delineated by the bar date, which is fixed by a bar order.

A bar order serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving a successful reorganiza-

tion.... Thus a bar order does not 'function merely as a procedural gauntlet,' but as an integral part of the reorganization process.

*In re Hooker Investments, Inc.*, 937 F.2d 833, 840 (2d Cir.1991) (citations omitted); *see also In re Drexel Burnham Lambert Group, Inc.*, 129 B.R. 22, 24 (Bankr.S.D.N.Y.1991) (because claims bar date provides mechanism for trustee to assess debtor's potential liabilities, a fixed and known bar date is essential to orderly administration and successful reorganization; requests for extension of bar date should be strictly scrutinized).

One effect of the confirmation of a chapter 11 plan of reorganization is to

discharge[ ] the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of [title 11] whether or not—

(i) proof of the claim based on such debt is filed or deemed filed under section 501 of [title 11];

(ii) such claim is allowed under section 502 of [title 11]; or

(iii) the holder of such claim has accepted the plan....

11 U.S.C. § 1141(d)(1)(A); *see also* 5 *Collier on Bankruptcy* ¶ 1141.01[4] at 1141–13 to 1141–15 (Lawrence P. King et al. eds., 15th ed. 1995). ACB acknowledges that it cannot recover damages from debtor in this adversary proceeding absent timely filed proof of claims. *See* ACB's Memorandum of Law In Opposition To Houbigant's Motion To Dismiss p. 96 n. 33. Because ACB did not file bankruptcy claims for the relief it is seeking in Counts I, III–X and XVII of the counterclaims, those Counts are barred as against Houbigant.[1]

---

1. In *In re Vecchio*, 20 F.3d 555 (2d Cir.1994), the Second Circuit held that in a chapter 7 case, a § 507(a)(7) priority claim asserted on behalf of the Internal Revenue Service would be accorded first-tier distribution under § 726(a)(1) of the Code, even though the claim was not timely filed. The court rejected a determination by the district and bankruptcy courts that the claim should be treated as a general unsecured claim under § 726(a)(3) of the Code. In doing so, it invalidated Bankruptcy Rule 3002 to the extent it is inconsistent with the text of §§ 726, 502 and 501 of the Code. *Id.* at 559. *Vecchio* was decided prior to the 1994 Bankruptcy Code amendments and this case predates those amendments. The decision is inapposite because this is not a chapter 7 case and § 726(a)(1) is not applicable. *See* 11 U.S.C. § 103(b). *But see In re Waindel*, 65 F.3d 1307 (5th Cir.1995) (because § 726(a) allows payment of priority tax claim even if proof of claim is tardily filed, application of Rule 3002 invalidated in chapter 13 case). Moreover, there are practical reasons for limiting the *Vecchio* rationale to the allowance of late filed tax claims in pre-amendment chapter 7 cases. In *In re Chavis*, 47 F.3d 818 (6th Cir.1995), the Sixth Circuit refused to apply *Vecchio* in a chapter 13 case. It rejected the government's assertion that Rule 3002 is invalid to the extent that it directs that a late filed tax claim be disallowed. Among other things, that court noted, as follows:

In a Chapter 7 action, the debtor's non-exempt assets are liquidated and the proceeds are distributed to the creditors. Accordingly, even late-filed claims must be paid before any distribution to the debtor may be made. In a Chapter 13 action, the debtor retains the assets in exchange for an agreement to make periodic payments to the creditors. The payments to the creditors must equal or exceed the amount

that the creditors would receive under Chapter 7. *See* 11 U.S.C. § 1325(a)(4). If late filed claims are not barred in Chapter 13 actions, it would not be possible to determine, with finality, whether a Chapter 13 plan satisfies this standard. Moreover, because Chapter 13 serves as a flexible vehicle for the repayment of allowed claims, all unsecured creditors seeking payment under a Chapter 13 plan must file their claims on a timely basis so that the efficacy of the plan may be determined in light of the debtor's assets, debts and foreseeable earnings.

47 F.3d at 824 (footnote omitted). *See also In re Waindel*, 65 F.3d at 1308 (Duhe, J., concurring) (in rejecting application of § 726(a) to chapter 13 case court found solid reasons for distinguishing between chapter 7 and chapter 13 cases). To confirm a chapter 11 plan in the face of the vote of a non-accepting holder of an impaired claim, the proponent must establish that the creditor will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive if the debtor were liquidated under chapter 7 of the Code. *See* 11 U.S.C. § 1129(a)(7). In every case, the plan proponent must demonstrate that confirmation of the plan is not likely to be followed by liquidation, or the need for further financial reorganization of the debtor or the successor to the debtor under the plan, unless such liquidation or reorganization is proposed under the plan. 11 U.S.C. § 1129(a)(10). The concerns noted in *Chavis* and Judge Duhe's concurrence in *Waindel* are equally relevant to this chapter 11 case and further our conclusion that *Vecchio* has no application herein.

*Counts II and XV*

■ In Count II, ACB seeks damages in excess of $6 million on account of Houbigant's alleged violations of the Canadian Trade-marks Act. *See* Counterclaim ¶¶ 138–140. As such, it corresponds with the Trademark Claim. In Count XV, ACB seeks damages in excess of $6 million on account of Houbigant's alleged post-petition breaches of the ACB License Agreement. *See* Counterclaim ¶¶ 199–204. Those allegations mirror the contentions underlying the Unilex Administrative Claim.

■ ACB does not dispute that it received timely and adequate notice of the General and Administrative Bar Dates, and that the Trademark Claim and Unilex Administrative Claim were not timely filed. Bankruptcy Rule 3003(c)(3) authorizes the court for cause shown to extend the time for filing proofs of claim. Bankruptcy Rule 9006(b)(1) allows a court to permit an act required to be done within a period of time to be performed after the specified period has expired "where the failure to do the act resulted from excusable neglect." The "for cause" requirement in Rule 3003(c)(3) is read in conjunction with Rule 9006(b). *See In re Drexel Burnham Lambert Group, Inc.*, 129 B.R. at 25. A creditor seeking to extend the bar date bears the burden of proving "excusable neglect." *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 360 (Bankr.S.D.N.Y.1993). Thus, "[a]fter passage of the bar date, [a] claimant cannot participate in the reorganization unless he establishes sufficient grounds for the failure to file a proof of claim." *In re Best Products Co., Inc.*, 140 B.R. at 357 (*citing Certified Class in Charter Securities Litigation v. Charter Co. (In re Charter Co.)*, 876 F.2d 866 (11th Cir.1989)).

In *Pioneer Inv. Serv. Co. v. Brunswick Assoc. L.P.*, —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court held that for purposes of Rule 9006(b), "neglect" encompasses inadvertent, mistaken or careless omissions, and those due to intervening circumstances beyond the party's control. —— U.S. at ——–——, 113 S.Ct. at 1494–95. The Court articulated the following analysis for determining whether neglect is excusable for purposes of Rule 9006(b):

Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking into account all relevant circumstances surrounding the party's omission. These include ... the prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

—— U.S. at ——, 113 S.Ct. at 1498.

■ It is undisputed that debtor has been prejudiced by the late filed claims: the untimely assertion of the subject claims has substantially delayed confirmation of the Plan and if the administrative claims are allowed in the amounts asserted, Houbigant cannot confirm its plan. ACB alleges that it failed to file these claims timely because it did not discover Houbigant's alleged wrongful conduct until after the bar dates lapsed. Counterclaim ¶ 127. ACB maintains that it could not ascertain them because Houbigant deliberately and fraudulently concealed that, in breach of the ACB Agreement, it granted Unilex a license to sell goods in Canada, and that it was the ultimate source of the Unilex goods. Counterclaim ¶¶ 36–38, 55–56, 117–21, 126–27. Debtor denies those assertions and contends that ACB possessed adequate information to timely file those claims, or an unliquidated or protective claim. *See In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. 1002, 1006–7 (S.D.N.Y.1993). It points to a letter dated April 11, 1994 from ACB to debtor, referred to by ACB, *see* Counterclaim ¶¶ 37, 56, and correspondence between ACB and ADNET, Inc., dated April 7, 1994, cited in the April 11 letter. Those letters demonstrate that ACB was aware that the licensed Houbigant trademark was being violated through the sale of counterfeit goods and that ACB believed certain Houbigant affiliates to be the source of those goods. We disagree that the correspondence conclusively demonstrates that ACB had enough knowledge to assert a claim against Houbigant. Debtor argues that the claims were filed as a bad faith response to the com-

mencement of this adversary proceeding and the Canada Trademark Litigation, and to obtain leverage in defending against the claims in those litigations. However, ACB contends that certain claims alleged herein exist only by reason of the litigation, and that the remainder of its claims against the debtor were not discoverable prior to the bar dates because debtor concealed the relevant facts. Counterclaims ¶¶ 55–56, 126–27. The *Pioneer* factors are " 'non-exclusive, non-formulaic guideposts' ". *In re R.H. Macy & Co. Inc.*, 161 B.R. at 361 (quoting *In re Eagle–Picher Industries, Inc.*, 158 B.R. 713, 715 (Bankr.S.D.Ohio 1993)). Whether to allow late filed claims is within the equitable discretion of this court. *Pioneer*, —— U.S. at ——, 113 S.Ct. at 1498. Assuming the truth of the relevant allegations in the counterclaim ACB could establish "excusable neglect" for its failure to file its claims timely, because it would be inequitable to permit debtor to profit from its alleged wrongdoing by barring the late filed claims. *Compare In re Arts Des Provinces De France, Inc.*, 153 B.R. 144, 147 (Bankr.S.D.N.Y.1993) (when debtor's action contributes to creditor's failure to timely file proof of claim, excusable neglect will be established; "debtors may not assume the role of righteous indignation when they contributed to the confusion"); *In re Hudson Oil Co., Inc.*, 100 B.R. 72 (Bankr. D.Kan.1989) (among factors noted by court in allowing late filed claim was that facts underlying claim were not discoverable until after bar date). At a minimum, triable issues of fact regarding the application of the administrative time bars to Counts II and XV of the counterclaims preclude judgment barring those claims.

■■■ Alternatively, Houbigant argues that those counts are barred because the Trademark Claim and Unilex Administrative Claim are time-barred general unsecured claims. Section 507(a)(1) of the Code specifies the expenses and claims entitled to administrative priority treatment in a bankruptcy case. "Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed." *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98,

100 (2d Cir.1986) (citing *Joint Industry Board v. United States*, 391 U.S. 224, 228, 88 S.Ct. 1491, 1493, 20 L.Ed.2d 546 (1968)); *see Nathanson v. N.L.R.B.*, 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952) ("if one claimant is to be preferred over others, the purpose should be clear from the statute"). Section 507(a)(1) accords a first priority to administrative expenses allowed under section 503(b). 11 U.S.C. § 507(a)(1). Section 503(b)(1)(A) defines administrative expenses as the "actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). An expense will be accorded administrative priority status under § 503(b) if (1) it arises out of a transaction between the creditor and the trustee or debtor in possession, and (2) the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor in possession in the operation of the business. *Cramer v. Mammoth Mart (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir.1976) (case decided under the Bankruptcy Act); *see In re Chateaugay Corp.*, 102 B.R. 335, 353 (Bankr.S.D.N.Y.1989) (*Mammoth Mart* analysis applicable to cases under the Code).

■■■ The Unilex Administrative Claim is predicated on Houbigant's alleged post-petition breach of the pre-petition ACB License Agreement. "Where the debtors' obligations stem from contractual liability, even a post-petition breach will be treated as giving rise to a pre-petition liability where the contract was executed pre-petition." *In re Chateaugay Corp.*, 87 B.R. 779, 796 (S.D.N.Y.1988), *aff'd*, 875 F.2d 1008 (2d Cir.1989), *rev'd on different grounds*, 496 U.S. 633, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990). *See also In re Cardinal Indus., Inc.*, 142 B.R. 801, 803 (Bankr.S.D.Ohio 1992). Upon order of this court, a debtor in possession may assume or reject an executory contract of the debtor. 11 U.S.C. § 365(a). ACB concedes that neither Houbigant nor ACB has sought or obtained an order authorizing or directing Houbigant to assume the license agreement. Nonetheless, it contends that by continuing to perform and to accept ACB's performance

under the license agreement post-petition, Houbigant assumed the agreement. Accordingly, it argues that its damage claim should be accorded administrative priority status. However, because the plain language of the Code provides that an executory contract cannot be assumed without court order, the notion of "assumption by conduct" is almost universally rejected. *See, e.g., Matter of Whitcomb & Keller Mortg. Co., Inc.*, 715 F.2d 375 (7th Cir.1983); *Texas Importing Co., Ltd. v. Banco Popular de Puerto Rico*, 360 F.2d 582 (5th Cir.1966); *In re Swiss Hot Dog Co.*, 72 B.R. 569 (D.Colo.1987); *In re Treat Fitness Center, Inc.*, 60 B.R. 878 (9th Cir. BAP 1986); *Schondorf v. Calin*, 58 B.R. 1014 (D.N.J.1986); *In re Broaddus Hospital Assoc.*, 159 B.R. 763 (Bankr.N.D.W.Va.1993); *In re Office Products of America, Inc.*, 136 B.R. 675 (Bankr.W.D.Tex.1992); *In re Providence Television Limited Partnership*, 113 B.R. 446 (Bankr.N.D.Ill.1990); *In re Revco D.S., Inc.*, 109 B.R. 264 (Bankr.N.D.Ohio 1989); *In re Lane*, 96 B.R. 164 (Bankr. C.D.Ill.1988); *In re Metro Transp. Co.*, 87 B.R. 338 (Bankr.E.D.Pa.1988); *In re Lew Mark Cleaners Corp.*, 86 B.R. 331 (Bankr. E.D.N.Y.1988); *In re Dublin Pub. Inc.*, 81 B.R. 735 (Bankr.N.D.Ga.1988). *But see In re Reda, Inc.*, 54 B.R. 871 (Bankr.N.D.Ill.1985). *Compare In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427, 435 (Bankr.S.D.N.Y. 1982) (where debtor has neither assumed nor rejected contract, so long as debtor continues to receive benefits of contract, it must also bear burdens of contract); *In re Shoppers Paradise, Inc.*, 8 B.R. 271, 279 (Bankr. S.D.N.Y.1980) (same). The cases cited by ACB are not to the contrary. In *In re Frontier Properties, Inc.*, 979 F.2d 1358 (9th Cir.1992), the court upheld a bankruptcy court determination that a so-ordered stipulation settling a motion for relief from stay was sufficient to constitute express approval of the debtor's assumption of the agreement for purposes of § 365(b)(1). No such order exists in this case. *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 482 (Bankr. S.D.N.Y.1991), is not an "assumption by conduct" case. Rather, the court considered whether a party to an executory employment agreement rejected post-petition was entitled to an administrative priority claim on account

of benefits conferred on debtor during the post-petition, pre-rejection period. The court deferred its ruling subject to its receipt of additional evidence. Finally, in *In re A.H. Robins Co., Inc.*, 68 B.R. 705, 707, 711 (Bankr.E.D.Va.1986), the court rejected the "assumption by conduct" theory in denying creditor's request for an order declaring *nunc pro tunc* that debtor, by its actions, assumed certain insurance contracts. *Id.* at 707, 711. ACB contends that if the ACB License Agreement has not been assumed, it must be deemed rejected pursuant to 11 U.S.C. § 365(d)(4). That section is inapplicable because it applies to "unexpired lease[s] of nonresidential real property under which the debtor is the lessee...." *Id.* Section 365(d)(2) of the Code, which is applicable to chapter 11 cases, provides that a debtor in possession "may assume or reject an executory contract ... of the debtor at any time before the confirmation of a plan ...." 11 U.S.C. § 365(d)(2). Houbigant is not deemed to have assumed or rejected the ACB License Agreement. Finally, because the Unilex Administrative Claim arises from Houbigant's alleged breach of contract, it is not predicated on "consideration ... both supplied to and beneficial to the debtor-in-possession in the operation of the business." *In re Mammoth Mart, Inc.*, 536 F.2d at 954; *see In re CIS Corp.*, 142 B.R. 640, 643 (S.D.N.Y.1992). The Unilex Administrative Claim does not qualify for administrative priority under the Code. It does not follow, however, that Count XV must be dismissed. As explained below, there is at least a triable issue over whether the late-filed Unilex Unsecured Claim is time-barred.

 The Trademark Claim sounds in tort. Houbigant maintains that the claim should be treated as one for damages occasioned by Houbigant's alleged breach of contract. It argues that even if viewed as a tort claim, it is a time-barred general unsecured claim. We consider only the latter issue. Claims arising from acts committed by the debtor in possession which give rise to tort liability are accorded administrative expense status. *See Reading Co. v. Brown*, 391 U.S. 471, 484, 88 S.Ct. 1759, 1766, 20 L.Ed.2d 751 (1968) (Act case); *Piper Aircraft Corp. v.*

Calabro (In re Piper Aircraft Corp.), 169 B.R. 766, 776 (Bankr.S.D.Fla.1994); Pettibone Corp. v. Ramirez (In re Pettibone Corp.), 90 B.R. 918, 933 (Bankr.N.D.Ill.1988). Claims arising from acts committed by a debtor which give rise to tort liability are accorded general unsecured status, regardless of when a cause of action cognizable under applicable non-bankruptcy law arises. See In re Johns–Manville Corp., 57 B.R. 680, 690 (Bankr.S.D.N.Y.1986); see also In re Piper Aircraft Corp., 169 B.R. at 776; In re Continental Airlines, Inc., 148 B.R. 207, 215 (D.Del.1992).

■ In the Trademark Claim, ACB contends that in or about July 1993, in violation of the ACB License Agreement and the Canadian Trade–Marks Act, Luigi Massironi, Houbigant's Chief Executive Officer, negotiated contracts on behalf of wholly owned Houbigant subsidiaries which lead to the sale of non-conforming and inferior Houbigant fragrances in Canada. ACB also contends that Houbigant failed to disclose the existence of those contracts to ACB. See Trademark Claim, Appendix ¶¶ 8–14. Houbigant denies that the Trademark Claim has merit. Alternatively, it argues that it is a time-barred general unsecured claim because it is predicated on the pre-petition acts of Massironi. The claim corresponds to ¶¶ 41–54 of the counterclaims and purports to allege that Houbigant violated the Canadian Trade–Marks Act by selling product to distributors who were free to resell them anywhere in the world, including Canada, and licensing others to manufacture and sell products anywhere in the world, including Canada. See Declaration of David Morrow, dated July 19, 1995, ¶ 15. Sections 20 and 22(1) protect against unauthorized "use" of the mark. Section 4.1 of the Act indicates when a trademark is deemed to have been used for purposes of the Act. In relevant part it states:

A trademark is deemed to be used in association with wares if, at the time of the transfer of the property in possession of the wares, in the normal course of trade, it is marked on the wares themselves or on the package in which they are distributed or it is in any other manner so associated with the wares that notice of the associa-

tion is then given to the person to whom the property or possession is transferred.

Under this provision, each step along the normal course of trade, i.e., beginning with the manufacturer, ending with the consumer, and with the wholesaler and retailer as intermediaries is a "use" for purposes of the Act. See Manhattan Industries, Inc. v. Princeton Manufacturers, Ltd., 4 C.P.R.2d 6 (Fed.Ct. 1971); S.A. Jetstream v. R.D. International Style, Ltd., 49 C.P.R.3d 336 (Fed.Ct.1993). ACB alleges that the unauthorized use of the trademark continued post petition. E.g., Counterclaim ¶ 57. There is a triable issue of whether that claim is time-barred which precludes judgment dismissing the claim.

■ Houbigant contends that the Unilex Unsecured Claim is time-barred for a different reason. It disputes ACB's characterization of the Unilex Unsecured Claim as an amendment to the Hec Claim and contends that the purported amendment constitutes an independent, time-barred unsecured claim. The decision to permit an amendment to a proof of claim is within the discretion of the bankruptcy court. E.g., In re McLean Industries, Inc., 121 B.R. 704, 708 (Bankr. S.D.N.Y.1990). "Amendments [to claims] are permitted where their purpose is to correct a defect in an earlier filed claim, to more fully describe the claim, or to put forth a new theory of recovery for the facts in the original claim." In re Drexel, Burnham, Lambert Group, Inc., 151 B.R. 684, 694 (Bankr. S.D.N.Y.1993). They are disallowed when their purpose is to create a new claim. In re G.L. Miller & Co., 45 F.2d 115, 116 (2d Cir.1930); In re Drexel, Burnham, Lambert Group, Inc., 151 B.R. at 694; In re W.T. Grant Co., 53 B.R. 417, 422 (Bankr.S.D.N.Y. 1985). We consider whether a similar claim or demand evidencing an intent to hold the estate liable has been timely asserted and whether it would be equitable to allow the amendment under the facts and circumstances of the particular case. In re Integrated Resources, Inc., 157 B.R. 66, 70 (S.D.N.Y.1993). In balancing the equities courts consider

(1) undue prejudice to the opposing party; (2) bad faith or dilatory behavior on the part of the claimant; (3) whether other

creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; (5) the justification for the inability to file the amended claim at the time the original claim was filed.

*In re McLean Industries, Inc.*, 121 B.R. 704, 708 (Bankr.S.D.N.Y.1990).

The Hec Claim alleges breach of the ACB License Agreement arising from Houbigant's failure to sell essential oils necessary to make fragrances to ACB at a cost equal to Houbigant's standard cost plus handling charges, and Houbigant's failure to use best efforts to sell such oils to ACB at a price competitive with the price charged by a comparable United States vendor. Hec Claim ¶ 3. The alleged breach of the license agreement underlying the Unilex Unsecured Claim is Houbigant and R.A. French Fragrances, Ltd.'s purported grant to Unilex of the right to sell fragrance products worldwide, without any territorial or trademark restrictions and in violation of the exclusivity provisions of ACB's License Agreement and Houbigant's alleged concealment of the breach. Unilex Unsecured Claim ¶ 7. The Hec and Unilex Unsecured Claims arise from alleged breaches of the ACB License Agreement. However, the conduct, transaction or occurrence at issue in the Hec Claim is substantially different from that asserted in the Unilex Unsecured Claim. Because the latter is a new claim based on different facts, it will not be allowed as an amendment to the Hec Claim. *See In re Alexander's, Inc.*, 176 B.R. 715, 723 (Bankr.S.D.N.Y.1995). Nonetheless, it may be allowable as a late filed general unsecured claim. For the reasons discussed above, there is at least a factual question of whether ACB can establish "excusable neglect" for its failure timely to file that claim, precluding the dismissal of Count XV as time-barred.

*Counts XIII and XIV*

▮ In Counts XIII and XIV of the counterclaims, ACB alleges that under principles of contractual indemnification and indemnification implied at law, respectively, Houbigant is required to indemnify it for any losses it may sustain as a result of the judgments taken against it in the Canada Trademark Litigation. Those allegations are encompassed by the late filed Indemnification Claim.

▮ In Count XIV, ACB alleges that because the ACB License Agreement vested Houbigant with a duty to supervise the quality of the products manufactured by ACB, Houbigant and ACB agreed that Houbigant would indemnify ACB for any claims of "trademark infringement" by third parties. Counterclaim ¶ 196. ACB further contends that to the extent there has been injury to Houbigant's trademarks and PPI's interest therein, that injury was caused by Houbigant's actions in (a) authorizing ACB's production of the supposedly "infringing" products and (b) entering into agreements with third parties free from any trademark or territorial restrictions. Counterclaim ¶ 197. A claim for indemnification implied in law does not ripen until the conduct giving rise to the right to indemnification occurs. *See O'Neil v. Shipman (In re Pratt and Whitney Co., Inc.)*, 143 B.R. 19, 22–23 (Bankr.D.Conn. 1992). *See also In re Food Barn Stores, Inc.*, 175 B.R. 723, 728–31 (Bankr.W.D.Mo. 1994). Thus, ACB's claim for indemnification implied in law, if any, arose when debtor permitted the allegedly "infringing" goods to gain entry to the Canadian market. ACB alleges that it had no knowledge of Houbigant's action until the bar dates lapsed. Counterclaim ¶¶ 126–27, 136. Debtor maintains that ACB was aware of the existence of the indemnification claim prior to the Administrative Bar Date because it knew that it was engaged in allegedly improper conduct which could trigger a trademark infringement action. However, ACB denies that it engaged in any wrongful conduct. Counterclaim ¶ 198. ACB's allegations establish that as of the Administrative Bar Date, it lacked knowledge that it could assert a claim for indemnification implied in law. Debtor is not entitled to judgment dismissing Count XIV as time-barred.

▮ ACB contends that the Count XIII likewise is not time-barred because it's right to indemnification under the ACB License Agreement did not arise until PPI–Canada commenced the Canada Trademark Litigation. However, a contractual indemnification claim exists as a contingent claim

against the indemnitor as of the date the indemnification agreement is executed. *See, e.g., In re Hemingway Transport Inc.,* 954 F.2d 1, 8–9 (1st Cir.1992); *In re THC Financial Corp.,* 686 F.2d 799, 802–04 (9th Cir. 1982). *Compare In re Chateaugay Corp.,* 102 B.R. at 351–52 (contingent indemnity loss claims arising from pre-petition agreement are pre-petition claims). *See also In re Remington Rand Corp.,* 836 F.2d 825, 830 (3d Cir.1988) (stating in dicta that an indemnity agreement creates a contingent right to payment between the contracting parties on signing the agreement). Because the ACB License Agreement was executed pre-petition, any claim arising out of ACB's contractual right to indemnification is a pre-petition unsecured claim. ACB knew or should have known that as of the Filing Date it held a contingent indemnification claim. It has not alleged any facts in its counterclaims which, if true, would establish "excusable neglect" for its failure timely to file that claim. Its claim for contractual indemnification is time-barred. As noted, the license agreement has not been assumed by Houbigant. Accordingly, ACB misplaces its reliance on *In re New York Trap Rock Corp.,* 137 B.R. 568 (Bankr. S.D.N.Y.1992). *In re Heck's Properties, Inc.,* 151 B.R. 739, 767–68 (S.D.W.Va.1992) is inapposite because the officers and directors who were granted administrative priority indemnification claims were hired post-petition by the debtor in possession.

### Conclusion

Based on the foregoing, Houbigant's motion for judgment on the pleadings dismissing the counterclaims on the basis of administrative time bars is granted in part and denied in part.

SETTLE ORDER.