In re: **THE VWE GROUP, INC., d/b/a V.W. Eimicke Associates, Inc., Debtor.**

**The Official Committee of Unsecured Creditors of the VWE Group, Inc., d/b/a V.W. Eimicke Associates, Inc., on behalf of itself, The VWE Group, Inc., d/b/a V.W. Eimicke Associates, Inc., Debtor, The Estate of the VWE Group, Inc., d/b/a V.W. Eimicke Associates, Inc. And the creditors of The VWE Group, Inc., d/b/a V.W. Eimicke Associates, Inc. Plaintiffs,**

v.

**Thomas R. Amlicke, Michael A. Meyers, Richard B. Rodman, Lawrence M. Hertz, Bruce R. Johnson, Daniel R. Goodman, Edmund S. Wartels, Douglas J. Wood, Peter D. Raymond, Donald M. Klein, John Doe 1–10 and Jane Doe 1–10. Defendants.**

**Bankruptcy No. 04 20308 ASH.
Adversary No. 06 08297 ASH.**

United States District Court, S.D. New York.

Jan. 5, 2007.

---

6. The position and principal arguments asserted by ESL were addressed in *Peaslee*.

Joseph O'Neil, Jr., New York, NY, for Debtor.

## MEMORANDUM DECISION AND ORDER GRANTING THE MOTION TO WITHDRAW THE REFERENCE

MCMAHON, *District Judge.*

VWE Group, Inc., d/b/a/ V.W. Eimicke Associates, Inc's (the "Debtor") is a family-owned New York corporation headquartered in Yonkers, New York and run by the Eimicke family. Prior to filing a bankruptcy petition on June 2, 2004, the Debtor was in the business of selling human resources products including copyrighted personnel forms, labor law posters, and human resources software.

The plaintiff in the present Adversary Proceeding is the official committee of unsecured creditors (the "Committee")—appointed in the Debtor's Chapter 11 case and authorized to "investigate and bring" any and all actions on behalf of and belonging to the Debtor and its estate. Pursuant to its investigation, the Committee discovered and continues to assert that a majority of the Debtor's creditors are innocent note holders who were defrauded by the Debtor's former officers, directors, shareholders and perhaps others in a "purported $26 million ponzi scheme that spanned over a decade." (Pl. Opp. at 2.)

In or about September 2005, counsel for the Committee advised that the District Attorney for Westchester County would be investigating the principals of the Debtor to determine if promissory notes had been fraudulently issued, and the Committee suspended its investigation. No prosecutorial action by the District Attorney was taken. The Committee has, however, commenced lawsuits against the Debtor's principals, which are currently pending before the Bankruptcy Court. In addition, two of the Debtor's principals have filed Chapter 7 bankruptcy proceedings, which are pending before the Bankruptcy Court.

Attorneys at the law firm of Hall Dickler LLP ("Hall Dickler") worked on various corporate and trusts and estates matters for the Debtor and its principals from the early 1990s through 2003. The Committee initially asserted that Hall Dickler knew of, and assisted the principals in carrying out, the ponzi scheme. The instant Adversary Proceeding was initiated on or about June 1, 2006 by the Committee against several former Hall Dickler partners.[1] The firm itself dissolved as of January 1, 2004. In the complaint, the Committee asserts a malpractice claim against the individual Hall Dickler attorneys, based on their alleged failure to advise the Debtor to seek Chapter 11 protection in a timely manner. In particular, the Committee alleges that during the period July 1, 2002 through December 31, 2003, the defendants represented the Debtor in connection with the negotiation and consummation of certain transactions (the "Taylor Transactions") with Taylor Corporation and its subsidiaries and affiliates (the "Taylor Entities"). The first of these included granting a lien to the Taylor Entities on substantially all the assets of the Debtor on account of an antecedent debt, that, at the time the lien was granted, was approximately $3,000,000 (the "Taylor Lien"). The Committee contends that after granting the Taylor Lien, the Debtor sold all of its assets to the Taylor Entities and used $4,223, 753.69 of the sale proceeds to repay secured and unsecured debt owed to the Taylor Entities. At the conclusion of the Taylor Sale, the Debtor's assets and future revenue generation ability were severely diminished and in excess of one-half of the proceeds of the Taylor Sale, or $4,663,965.05 were either repaid to Taylor Entities or used to satisfy selected liabilities that the Taylor Entities directed the Debtor to repay.

The complaint alleges that the Taylor Transactions rendered the Debtor hopelessly insolvent, with no ability to make distribution to the holders of the Debtor's debt securities and instruments in an aggregate amount in excess of $20,443,657. The Committee claims that the individual Hall Dickler defendants had a duty to inform the Debtor of all its options—one of which was the filing of a Chapter 11 petition—sooner rather than later, but failed to do so. Had defendants provided competent legal advice, the complaint asserts, the Debtor and its estate would have preserved an additional amount of approximately $4,223,753.69. The Committee seeks damages in that amount from the individual Hall Dickler defendants.

When Hall Dickler went out of business, all of the individual defendants joined Reed Smith LLP, as partners, and all but two of the individual defendants (Daniel R. Goodman and Bruce C. Klein) are still partners at Reed Smith. Reed Smith was appointed to represent the Debtor in its Chapter 11 case.

---

**1.** One of the defendants originally named in this action, Bruce C. Johnson, was not a partner at Hall Dickler LLP. Plaintiff has represented to this Court that the Adversary Proceeding against Mr. Johnson will be discontinued.

The Adversary Proceeding is currently before the Bankruptcy Court on the same discovery and trial schedule as other lawsuits instigated by the Committee. On July 13, 2006, the Bankruptcy Court entered a scheduling order that requires all discovery to be concluded no later than November 30, 2006, that a pre-trial conference to be held on January 9, 2007, and that the parties be required to proceed with trial within one week thereof. (I have checked with Judge Hardin's chambers, and those dates have slipped somewhat; the pre-trial conference is presently calendared for January 30).

On August 15, 2006, the defendants moved to dismiss the adversary complaint. Plaintiff filed their opposition papers on October 27, 2006.

Defendants filed the present Motion to Withdraw the Reference on or about October 19, 2006, some four and one half months after the filing of the adversary proceeding. On that same date, defendants filed a jury demand. Because no answer had yet been filed, the demand was timely. See Fed.R.Civ.P. 38(b).

The Bankruptcy Court denied the motion to dismiss—along with plaintiff's cross motion for summary judgment—on November 21, 2006, after the filing of the motion to withdraw the reference and the jury demand.

In their motion, defendants argue that plaintiff's legal malpractice claim against the Debtor's pre-petition counsel is not a core proceeding under the Bankruptcy Code, and that defendants are entitled to a jury trial and all the rights afforded them by the Federal Rules of Civil Procedure in defending themselves against this claim. Thus, they argue, this court should withdraw the reference.

## Analysis

In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court ruled that Congress could not constitutionally empower a non-Article III bankruptcy court with the authority to adjudicate a state breach-of-contract action, based on a pre-petition contract, brought by a debtor against a defendant that had not filed a claim with the bankruptcy court. The court held that "our Constitution reserves for Art. III courts" traditional functions of the judicial power such as adjudicating state breach-of-contract claims like that by the debtor against the defendant. *Id.* at 84, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598. Accordingly, the Court in *Marathon* found unconstitutional Congress's broad grant of jurisdiction to the bankruptcy courts to adjudicate such claims in the Bankruptcy Act of 1978.

In response to *Marathon*, Congress enacted 28 U.S.C. § 157. *See In re Ben Cooper, Inc.*, 896 F.2d 1394, 1398 (2d Cir.) (*Ben Cooper I* ), vacated and remanded, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), reinstated on remand, *In re Ben Cooper, Inc.* 924 F.2d 36, 38 (2d Cir.)(*Ben Cooper II* ). Section 157 classifies matters as either "core proceedings," which the bankruptcy court may "hear and determine" and on which the "may enter appropriate orders and judgments," § 157(b)(1), or "non-core proceedings," which the bankruptcy court may hear, but for which—absent the parties' consent—the bankruptcy court is only empowered to submit proposed findings of fact and conclusions of law to the district court for its consideration and for *de novo* review of any matter to which any party has timely and specifically objected, § 157(c)(1).

The district courts have original jurisdiction over all civil proceedings "arising under title 11, or arising in or related to

cases under title 11."28 U.S.C. 1334(b). In this district, the District Court automatically refers all such cases to the Bankruptcy Court in the first instance. However, under 28 U.S.C. § 157(d), a "district court may withdraw ... any case or proceeding referred [to the bankruptcy court] on its own motion or on timely motion of any party, for cause shown." Section 157(d) does not define the term "cause." District courts in this circuit have considered a number of factors in evaluating "cause:" whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law. *See, e.g., In re Kenai Corp.*, 136 B.R. 59, 61 (S.D.N.Y.1992).

 Moreover, "the core/non-core evaluation also determines the relevance of the parties' jury trial rights to deciding a motion to withdraw the reference." *In re Orion Pictures Corporation*, 4 F.3d 1095, 1101 (2nd Cir.1993). Because the Second Circuit has definitively held that the "Constitution prohibits bankruptcy courts from holding jury trials in non-core matters," *Id.*, a finding that plaintiff's malpractice claim against the defendants is non-core means that defendants have a right to a jury trial, which gives rise to "cause" for withdrawing the reference of the claim to the bankruptcy court. *See id.* ("If a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference."); *In re CIS Corp.*, 172 B.R. 748, 755 (S.D.N.Y.1994) ("The fact that an adversary proceeding concerns non-core matters for which the right to jury trial is available is sufficient cause for discretionary withdrawal of reference under § 157(d).") (citing *Orion*).

Consideration of these factors compels this court to grant defendants' motion to withdraw the reference.

## I. The Withdrawal Motion is Not Untimely

As a threshold matter, plaintiff argues that defendants' Motion to Withdraw the Reference is untimely under § 157(d). I disagree.

 "There is no specific time limit for applications under 28 U.S.C. § 157(d) to withdraw a reference to the bankruptcy court ...." *Lone Star Indus. v. Rankin County Economic Dev. Dist. (In re New York Trap Rock Corp.)*, 158 B.R. 574, 577 (S.D.N.Y.1993). In this Circuit, however, courts have defined "timely" to mean "as soon as possible after the moving party has notice of the grounds for withdrawing the reference." *Official Comm. of Unsecured Creditors of FMI Forwarding Co. v. Union Transp. Corp. (In re FMI Forwarding Co.)*, 2005 U.S. Dist. LEXIS 941, No. 04 Civ. 630, 2005 WL 147298, at *6 (S.D.N.Y. Jan.24, 2005) *see also Kentile Floors v. Congoleum Corp. (In re Kentile Floors )*, 1995 U.S. Dist. LEXIS 11421, 1995 WL 479512, at *2 (S.D.N.Y. Aug.10, 1995). Plaintiff argues that since the basis for the defendants' motion—namely their assertion that the claims in the Adversary Proceeding are non-core—has been known to the defendants all along, their unexplained four and one half month delay in making the motion after the complaint was filed renders the motion untimely.

Defendants argue that the purported "delay" is not unreasonable because the case is actually "in its preliminary stages." (Def. Reply. Br. at 6). At the time of their motion to withdraw the reference, defendants had not yet answered the complaint. Instead they had filed a motion to dismiss on which the bankruptcy court had not yet ruled at the time the motion made.

Although discovery was supposed to be complete under the original timetable set by Judge Hardin—and I assume that at least some discovery has occurred—they argue that there has been no significant activity in the Bankruptcy Court to date.

Defendants correctly point out that most cases in which motions to withdraw the reference were held untimely involved significantly longer delays than five months. *See In re WorldCom, Inc.*, 2006 WL 2129309, at *2 (motion was untimely where over 18 months had elapsed between debtor's objection to proof of claim and claimant's motion to withdraw the reference); *In re FMI Forwarding Co., Inc.*, 2004 WL 1348956, at *6 (motion was untimely when made 18 months after movant became aware of grounds for the motion); *Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.)*, 2003 WL 23021972, at *2 (S.D.N.Y. Dec 24, 2003)(motion was untimely when filed 31 months after commencement of adversary proceeding). Conversely, those cases where motions were denied as untimely after only a few months involved very clear indications of tactical delays and forum shopping after the bankruptcy judge made intermittent findings adverse to the moving party. *See Lone Star*, 158 B.R. at 577 ("Forum shopping efforts pursued by awaiting a decision relevant to the merits and then bypassing or filing a motion to transfer should not be rewarded with success"); *see also Laine v. Gross*, 128 B.R. 588, 589 (D.Me. 1991)("Only after the Bankruptcy Court denied their motion to dismiss, having invested a significant amount of time and energy, did Defendants try another tack and seek withdrawal of the reference.") When defendants initially filed their motion to withdraw the reference, the motion to dismiss had not yet been ruled on, so defendants were not attempting to evade an adverse finding. Of course, the motion to dismiss was decided while this motion was sub judice, but the court is prepared to condition the withdrawal of the reference on defendants' promise not to renew that motion, thus ensuring that defendants do not impermissibly take advantage of the court's ruling by trying to get a second bite at the apple. *See e.g., Interconnect Telephone Serv., Inc. v. Farren*, 59 B.R. 397, 402 (S.D.N.Y.1986)(Motion to withdraw a reference filed a year after the action was commenced is not untimely and is properly granted where, *inter alia*, defendants represented to the Court at a conference that they would not renew their motion to dismiss if the action is withdrawn).

While there are cases denying motions to withdraw a reference after such short delays, in none of those cases had the moving party asserted a right to a jury trial.

The court finds that defendants' motion is timely filed.

## II. Defendants Have Shown "Cause" for Withdrawal

### A. This Case is a Non–Core Proceeding

In *In re Orion Pictures Corporation*, the Second Circuit instructed that a district court deciding whether to withdraw the reference should "first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." *Orion*, 4 F.3d at 1101. Once the district court makes the core/non-core determination, it should proceed to weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors. *Id.*

*Orion's* clear language refutes plaintiff's contention that the core/non-core

determination must be made by a bankruptcy judge. (Pl. Opp. at 8–9). Courts of this circuit have held repeatedly that district courts may determine the nature of the proceeding in the first instance. *See Official Comm. of Unsecured Creditors of FMI Forwarding, Co., Inc. v. Union Transp. Corp (In re FMI Forwarding Co., Inc.)* 2004 WL 1348956 at *6 n. 5 (S.D.N.Y. June 16, 2004)("The courts of this Circuit have ruled time and again that, in the context of a withdrawal motion, the district court ruling on such motion does not have to wait for the bankruptcy court to determine whether the claims at issue are core or non-core") *See Union Turnpike, Inc. v. Howard Beach Fitness Center, Inc.,* 209 B.R. 307 (S.D.N.Y.1997) ("reject[ing] [defendant's] argument that the bankruptcy court alone decides whether a proceeding is 'core' or 'non-core.'"); *In re CIS Corp.,* 172 B.R. at 755 ("Nothing in [§ 157(b)(3)] vests that power exclusively in the bankruptcy court."); *Interconnect Telephone Serv.,* 59 B.R. at 401 n. 2 (emphasizing that § 157(b)(3) "says nothing of the district court's ability to classify a proceeding where the bankruptcy court has not already done so.").

■ It is abundantly clear that this claim for pre-petition malpractice against the debtor's former lawyers is a non-core proceeding.

Section 157(b)(2) sets forth a non-exhaustive list of categories of core proceedings, including "(A) matters concerning the administration of the estate." More generally, the courts of this Circuit have emphasized that core proceedings must "invoke a substantive right" created by federal bankruptcy law that would not exist outside of a bankruptcy case. *Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP,* 201 B.R. 635, 639 (1996). In contrast, non-core proceedings "involve disputes over rights that ... have little or no relation to the Bankruptcy Code, do not arise under the federal bankruptcy law and would exist in the absence of a bankruptcy case." *See id.,* (citing *J. Baranello & Sons, Inc. v. Baharestani (In re J. Baranello & Sons, Inc.),* 149 B.R. 19, 24 (Bankr.E.D.N.Y.1992)).

Importantly, however, 28 U.S.C. § 157(b)(3) specifies that "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law," a view confirmed by the Second Circuit. *See In re Manville Forest Products Corp.,* 896 F.2d 1384, 1389 (2d. Cir.1990) ("the mere fact that [plaintiff's] claim raises issues of state law does not preclude a holding that the adversary proceeding is core")(citing *Ben Cooper*). It follows then that, "bankruptcy courts are not precluded from adjudicating state law claims when such claims are at the heart of the administration of the bankrupt estate." *See In re CIS Corp.* 172 B.R. 748, *756 (S.D.N.Y., 1994)(citing *In re Ben Cooper, Inc.,* 896 F.2d at 1399).

The plaintiff's complaint asserts a state-law professional malpractice claim against individual attorneys employed by the Debtor's pre-petition counsel, Hall Dickler, based on their alleged failure or refusal "to advise the Debtor of its option to file for Chapter 11 in a timely manner, to either prevent the grant of the Taylor Lien or to preserve that lien for the benefit of the Debtor's estate." (Complaint at ¶ 39). Courts in this circuit have "consistently found professional malpractice claims arising out of pre-petition misconduct to be non-core." *In re FMI Forwarding Co., Inc.,* 2004 WL 1348956, at *4; *see also In re Complete Mgmt.,* 2002 WL 31163878, at *3 (malpractice claim brought by debtor against accounting firm was non-core); *Morshet Israel, Inc. v. Audrey and Sydney Irmas Charitable Found. (In re*

*Morshet Israel, Inc.),* 1999 WL 165699, at *3 (S.D.N.Y. Mar.24, 1999)(third-party malpractice claim against law firm was non-core); *Wechsler,* 201 B.R. at 639–40 (malpractice claim against debtor's law firm arising out of pre-petition legal work was non-core); *United Orient Bank v. Green (In re Green),* 200 B.R. 296, 298–99 (S.D.N.Y.1996)(malpractice claim against debtor's law firm that provided pre-petition legal advice was non-core); *Hackling v. Kahn (In re Luis Elec. Contracting Corp.),* 100 B.R. 155, 156 (E.D.N.Y.1989)(malpractice claims against debtor's accountants for alleged pre-petition misconduct were non-core.)

Plaintiff tries to circumvent this precedent by asserting, in conclusory fashion and without any explanation, that the adversary proceeding requires adjudication of bankruptcy law issues "including creditors' rights, preservation of estate and res and lien avoidance under the Bankruptcy Code." (Pl. Opp. Br. at 12). Apparently, it is plaintiff's position that only a Bankruptcy Court can determine whether a law firm's failure to advise a corporation to declare bankruptcy at a particular point in time (assuming, of course, that there was such a failure) is or is not malpractice. But that is absurd. The issue to be addressed is whether the defendants' legal advice to plaintiffs met the standard of care of a reasonable attorney in providing such advice under the circumstances presented. Plaintiff's attempt to recast a state malpractice claim arising from the defendants' pre-petition conduct in bankruptcy terms fails.

No more persuasive is plaintiff's conclusory argument that the Adversary Proceeding is "one of several related and intertwined proceedings" before the Bankruptcy Court. (Pl. Opp. Br. at 11.) Aside from parallel discovery and trial schedules, plaintiff has not explained the purported overlap between this adversary proceeding and any of the other proceedings pending before the Bankruptcy Court. Most of the pending adversary proceedings appear to have been brought by the Debtor against trade creditors to avoid preferential or fraudulent transfers. Two were brought by the Committee. One of these seeks to avoid transfers made from the Debtor to family members of the Debtor's former officers and directors. The second asserts claims against the Debtor's former principals based on alleged excessive salaries, illegal dividends, insider loans, and other fringe benefit payments. None bears any relation to the plaintiff's claim against prepetition counsel for legal malpractice. The issues in the present case are thus both factually and legally distinct.

Plaintiff also contends that the adversary proceeding "raises interesting issues regarding Reed Smith LLP's participation in this case while members of that law firm are Defendants in the Adversary Proceeding." (Pl. Opp. Br. at 11.) Because the regulation of Reed Smith LLP's conduct concerns the administration of the estate, plaintiff argues, the Adversary Proceeding is a *core proceeding* under § 157(b)(2)(A).

In fact, the claim at issue in the Adversary Proceeding is against lawyers from Hall Dickler for conduct allegedly committed while they were at Hall Dickler. There is no claim here against Reed Smith, since none of the defendants worked at Reed Smith when the alleged malpractice was committed. Therefore, the adversary proceeding does not raise any issue, "interesting" or otherwise, relating to the bankruptcy court's oversight of Debtor's counsel Reed Smith LLP and the administration of the estate. Significantly, the Committee has raised no objections to Reed Smith's retention as the Debtor's

counsel in the bankruptcy case in the two years since Reed Smith LLP's retention.

Plaintiff's final contention—that defendants have implicated the Bankruptcy Court's "core function" of claim adjudication by filing claims against the Debtor—is also meritless because defendants have not filed any such claims. *See In re CBI Holding Co., Inc.*, 311 B.R. at 362. The purported "claims" filed by "defendants" are claims by Reed Smith for compensation for its services as Debtor's attorneys. Reed Smith's request for compensation was not met with an Adversary Proceeding against Reed Smith or any partner of Reed Smith in his capacity as a partner of Reed Smith. The Adversary Proceeding here is against the individual defendants in their capacities as partners of Hall Dickler, for conduct pre-dating Reed Smith's retention by the Debtor. None of the individual defendants in his capacity as a Hall Dickler partner (or former partner) has filed any claim against the bankruptcy estate.

■ It appears that plaintiff is arguing that, because some of the defendants are presently partners of Reed Smith, and because Reed Smith is a limited liability partnership (not a corporation), the firm's claims are asserted on behalf of the individual defendants who are partners of Reed Smith. But assuming arguendo that, as a matter of Limited Liability Partnership law, Reed Smith's claim for fees is attributable to each of the firm's individual partners, it is well settled that the filing of a proof of claim by a creditor does not automatically transform every non-core claim against that creditor into a core claim. The case law makes clear that result is warranted only under limited circumstances that are absent here. *See In re Enron Corp., et al.*, 349 B.R. 108 (2006).

■ There is no question that adjudication of Reed Smith's fee application concerns the "allowance or disallowance of claims," which is a core bankruptcy function under § 157(b)(2)(B). *Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 58, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). Moreover, where a creditor has filed a proof of claim and thereby initiated a proceeding that affects the allowance or disallowance of a claim, adversary proceedings commenced by the debtor that are "tantamount to a counterclaim are also properly considered core." *Enron, supra.*, at 112. However, a claim against people who happen to be partners of Reed Smith today for pre-petition malpractice committed while they were members of another law firm cannot be considered "tantamount to a counterclaim" against the Reed Smith firm and its partners.

It is also appropriate to treat as core a proceeding where a debtor commences an action against a creditor and the creditor asserts a set-off counterclaim that also affects the allowance and disallowance of claims against the estate. *Id.* (Citing *In re Iridium Operating LLC*, 285 B.R. 822, 828 (S.D.N.Y.2002)). But for the same reason, a claim for pre-petition malpractice against a few partners of Reed Smith, who are sued in their capacity as former partners of a different law firm, would not give rise to a "set off" against monies due and owing to the Reed Smith law firm. The issues raised by the instant adversary complaint are wholly divorced from any dispute over how much Reed Smith should be paid for representing the Debtor in bankruptcy. Therefore, the non-core malpractice claim cannot be converted into a "core" claim by the expedient of linking it to Reed Smith's fee applications.

Thus, the court finds that this pre-petition professional malpractice case is a non-core proceeding.

### B. Defendants have not waived their right to a jury trial.

■ There is no dispute that a malpractice claim sounds in tort and is legal rather

than equitable in nature. But plaintiff argues that defendants have submitted themselves to the equitable jurisdiction of the bankruptcy court—and thus have waived their right to a jury trial—because Reed Smith filed its claim for fees earned in its representation of the bankruptcy estate. This argument, too, is wholly without merit.

If a creditor who files claims against a debtor is met with an adversary proceeding, the resolution of which affects the restructuring of debtor-creditor and creditor-creditor relations, then the creditor loses its Seventh Amendment rights, even if the adversary proceeding raises traditionally legal claims. *In re CBI Holding Co., Inc.* 311 B.R. at 365 (citing *Langenkamp v. C.A. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990)). But the fact pattern before the court cannot be equated to the one contemplated by the court in *In re CBI*. Defendants do not lose their right to a jury trial on allegations of pre-petition malpractice when they were members of Law Firm A by virtue of their status as partners in Law Firm B, which (as a firm) asserts a claim for fees earned post-petition. Rather, it is only where the creditor files a claim and is then met with an adversary proceeding that affects the restructuring of debtor-creditor and creditor-creditor relations that the creditor waives its Seventh Amendment rights. The Adversary Proceeding here bears no such relation to fee applications by Reed Smith.

*C. Additional Considerations Support the Withdrawal of the Reference*

■ Under *Orion*, the court's finding that the claim is non-core coupled with defendants' jury demand is sufficient cause to withdraw the reference. *Orion, supra.,* 4 F.3d at 1101. However, in this case, withdrawal of the reference also promotes the efficient use of judicial resources. Since the Bankruptcy Court's determination of this non-core claim would be subject to *de novo* review in the district court, unnecessary costs can be avoided by a single proceeding in this court. *Id.* Moreover, contrary to plaintiff's contention, the underlying professional malpractice claim at issue is more appropriate for resolution by a district court. *See e.g. In re Complete Mgmt.*, 2002 WL 31163878, at *3.

Withdrawing the reference will not result in undue delay in the resolution of the plaintiff's claim. Discovery in the Adversary Proceeding has apparently been taking place, but that discovery can be used in an action pending in this court. Rather than prejudice the plaintiff, withdrawing the reference at this point will avoid the duplication of effort.

Nor will withdrawal of the reference adversely affect the uniformity of bankruptcy administration because the Committee's non-core professional malpractice claim (a) is not brought under bankruptcy law; (b) arose prior to and independent of the Debtor's bankruptcy filing; and (c) does not otherwise concern administration of the bankruptcy estate. *See In re FMI Forwarding Co., Inc.*, 2004 WL 1348956, at *7.

Finally, withdrawing the reference will not result in forum-shopping because, due to defendants' demand for a jury trial on this non-core claim, the parties have no choice but to try the case in this court. *Id.*

## CONCLUSION

For the reasons stated above, defendants' motion to withdraw the reference of Adversary Proceeding 06–08297 from the Bankruptcy Court is granted.